**DODGE MFG. CO. et al. v. PATTEN.**

No. 4702.

Circuit Court of Appeals, Seventh Circuit.

June 22, 1932.

Rehearing Denied Oct. 6, 1932.

See, also, 23 F.(2d) 852.

tion on the part of Dodge Manufacturing Corporation that venue was not laid for the jurisdiction of the court over that corporation, because neither it nor appellee is or was a resident of the judicial district of the trial court, as required by the Judicial Code, § 51 (U. S. C., tit. 28, § 112 [28 USCA § 112]), which, in so far as it relates to the instant case, is as follows: " * * * Where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

In United States v. Southern Pacific Railroad Company, 49 F. 297, 302, it was held by Mr. Justice Harlan, speaking for the Circuit Court in the Northern District of California, that a corporation, for the purposes of jurisdiction in personam, may have additional habitations in states other than the one in which it was incorporated. In referring to the cases which hold that for the purposes of jurisdiction in the courts of the United States a corporation is to be deemed a citizen of the state creating it, Justice Harlan said: "Those cases undoubtedly hold that a corporation cannot throw off its allegiance or responsibility to the state which gave it existence, and that its primary, legal domicile or habitation—that is, its citizenship—is in such state; consequently, for the purposes of suing and being sued in the courts of the United States, it is to be deemed a citizen of the state by whose laws it was made an artificial person. But neither those cases, nor any case in the supreme court of the United States, directly decides that a corporation may not, in addition to its primary, legal habitation or home in the state of its creation, acquire a habitation in, or become an inhabitant of, another state, for purposes of business, and of jurisdiction in personam."

He then refers to certain sections of the Code of Civil Procedure of California relating to corporations of other states transacting business in that state, and says:

"It is thus seen that corporations of other states do business here under the license of this state, subject to the implied condition that they may be brought, by service of process upon their agents, before the courts of this jurisdiction; * * *

"If it be said that inhabitancy in a state, in its strict legal sense, implies a permanent, fixed residence in that state, the answer is that a corporation of one state, operating, by agents, a railroad or telegraph line in another state, with its consent, or under its license,

A. Trevor Jones, of Chicago, Ill. (Hopkins, Sutter, Halls & De Wolfe, of Chicago, Ill., of counsel), for appellants.

Wm. J. Peck, of Peoria, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

We are first confronted with the conten-

680

may be regarded as permanently identified with the business and people of the latter state, and, for the purposes of its business there, to have a fixed residence within its limits; * * * It does there just what it would do if it had received its charter from that state. It seems to the court that a corporation of a state, * * * holding such close relations with the business and people of another state, may, within a reasonable interpretation of the act of 1887, be deemed an 'inhabitant' of the latter state for all purposes of jurisdiction in personam by the courts held there; although a corporation is, and, while its corporate existence lasts, must remain, a 'citizen' only of the state which gave it life."

■ We are impressed with the reasoning of that opinion, and are convinced that it is not inconsistent with the later rulings of the Supreme Court. We regard it as especially applicable to the instant case because the facts in this case relative to residence in Indiana are quite as strong as in the California case, and the pertinent statutes of Indiana relative to corporations of other states transacting business in Indiana are substantially the same as those of California. See Burns' Indiana Statutes 1926, §§ 4913, 4918, 4923. We think the court had jurisdiction of appellant Dodge Manufacturing Corporation.

■ The remaining question to be considered arises over the construction of the contract referred to as Exhibit A. It is upon that contract alone that the suit is based. The contract referred to as Exhibit B was entered into about five months later, and is characterized by the parties as being supplementary to, and as a part of, Exhibit A. While Exhibit B is not in any way relied upon by appellee as a basis for his action, yet it was properly admitted in evidence, and we think it is of vital importance as bearing upon the parties' own construction of Exhibit A, and upon appellee's right of action on Exhibit A.

The trial court proceeded upon the theory that Exhibit A is not simply a contract for royalties, but that it is one for the transfer of an interest in the National Pulley Company.

The contract in suit was entered into by appellee and National Steel Pulley Company as parties of the first part, and Oneida Steel Pulley Company as party of the second part. It is well to bear in mind the situation of the parties, and just what property was involved therein and how it was owned at the time the contract was entered into.

Oneida Company was, and had been for some time, a manufacturer of pulleys other than those produced by National Company and those described in appellee's patent. It owned one-half the capital stock of National Company. Appellee owned his patent and also one-half the capital stock of National Company. The National Company had no property interest in the patent, but it was organized for the purpose of manufacturing the pulleys described in that patent, and it owned the dies, tools, and machinery used by it in making pulleys which it supposed were covered by the patent. All parties to the contract thought, in good faith, that the patent covered all pulleys manufactured by National Company.

It is quite apparent from the contract that appellee desired to rid himself of the burden and responsibility of, and the liabilities for, the manufacture and sale of the product, and it was therein agreed that Oneida Company should assume all such burdens, responsibilities, and liabilities. That interpretation is reinforced by the fact that appellee refused to interest himself in the defense of a threatened action for infringement, claiming that by the terms of the contract he was not called upon to do so. He was to do nothing except to assist in every way possible, if Oneida Company so desired, in the removal of all dies, tools, machines, and all other property of National Company to Oneida, N. Y.

Appellee as an individual had no authority whatever to dispose of the assets of National Company, for he owned nothing but stock in that concern. If Oneida Company was in any way obligated for the use and possession of the property of National Company, that obligation would move to National Company and not to appellee individually. He and Oneida Company were equal owners of the National Company stock, and neither was entitled to its assets except by way of dividend or upon dissolution. The only asset, therefore, which appellee transferred by the contract in suit was his patent, and for that he was to receive royalties during the life of the patent. The language of the contract in this respect is clear and unambiguous. If it be said that, in addition to the patent, Oneida Company also received dies, tools, and machinery, the answer is that it received them from National Company and not from appellee, and he is not entitled to payment for their use or their value. The trial court said that aside from the subject of royalties the contract transferred an interest in National Company. But to what interest does

the court refer, and who transferred it? So far as this record shows, appellee owned nothing but his patent and one-half the capital stock of National Company, which stock ownership was all the interest he had in that company. He did not transfer any stock, but he did assign his patent. The assignment of the patent, however, transferred no interest in National Company, because that company owned no part of it. If the transfer of interest mentioned by the trial court refers to a transfer by National Company of the dies, tools, and machinery, it is quite apparent that appellee cannot recover for such transfer.

In view of the fact that National Company has never been dissolved, and the further fact that by the supplemental contract of June 14, 1928, appellee sold and transferred to Oneida Company his one-half interest in the capital stock of and "all his right, title and interest in and to" the National Company, we think his right to recover for any interest he may have had in that company is precluded.

We are convinced that the royalties referred to in both contracts were exclusively for the use of the patent; and, inasmuch as no pulleys covered by the patent were ever made or sold by either appellant, they will not be required to pay the royalties designated by the contract in suit. Pursuant to the contract, they have reassigned the patent to appellee and have deposited it with the court for his benefit, and he has received all rights which the contract gives him.

The fact that appellants have erroneously paid, and appellee has erroneously received, the royalties for several years, is not sufficient to estop appellants from discontinuing further payment of royalties to appellee.

The decree of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.