## NEIRBO CO. ET AL. v. BETHLEHEM SHIPBUILDING CORP., LTD.

No. 38. Argued October 17, 18, 1939—Decided November 22, 1939.

166

*Messrs. Robert P. Weil* and *Laurence Arnold Tanzer* for petitioners.

*Mr. William D. Whitney* for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The case is here to review the affirmance by the Circuit Court of Appeals for the Second Circuit of an order of the District Court for the Southern District of New York setting aside service of process upon Bethlehem Shipbuilding Corporation, Ltd. (hereafter called Bethlehem) and dismissing as to it petitioners' bill, 103 F. 2d 765. The suit was based on diversity of citizenship and was not brought "in the district of the residence of either the plaintiff or the defendant." (§ 51 of the Judicial Code, Act of March 3, 1887, 24 Stat. 552, as corrected by Act of August 13, 1888, 25 Stat. 433, 28 U. S. C. § 112.[1]) We took the case, 307 U. S. 619, because of the uncertainties in application of § 51, emphasized by conflict between the views below and those of the Circuit Court of Appeals for the Tenth Circuit. *Oklahoma Packing Co.* v. *Oklahoma Gas & Elec. Co.*, 100 F. 2d 770. The sole question in the case is whether § 51 is satisfied by the designation by a foreign corporation of an agent for service of process, in conformity with the law of a state in which suit is brought against it in one of the federal courts for that state.

The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But

[1] Section 112 reads as follows: "Except as provided in sections 113 to 117 of this title, no person shall be arrested in one district for trial in another in any civil action before a district court; and, except as provided in sections 113 to 118 of this title, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

the locality of a law suit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition. This basic difference between the court's power and the litigant's convenience is historic in the federal courts. After a period of confusing deviation it was firmly reëstablished in *General Investment Co.* v. *Lake Shore Ry. Co.,* 260 U. S. 261, and *Lee* v. *Chesapeake & Ohio Ry. Co., ibid.* 653, over-ruling *Ex parte Wisner,* 203 U. S. 449, and qualifying *In re Moore,* 209 U. S. 490. All the parties may be non-residents of the district where suit is brought. *Lee* v. *Chesapeake & Ohio Ry. Co., supra.* Section 51 "merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election." *Commercial Ins. Co.* v. *Stone Co.,* 278 U. S 177, 179.

Being a privilege, it may be lost. It may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct. *Commercial Ins. Co.* v. *Stone Co., supra.* Whether such surrender of a personal immunity be conceived negatively as a waiver or positively as a consent to be sued, is merely an expression of literary preference. The essence of the matter is that courts affix to conduct consequences as to place of suit consistent with the policy behind § 51, which is "to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found." *General Investment Co.* v. *Lake Shore Ry. Co., supra,* at 275.

When the litigants are natural persons the conceptions underlying venue present relatively few problems in application. But in the case of corporate litigants these procedural problems are enmeshed in the wider intricacies touching the status of a corporation in our law. The

corporate device is one form of associated enterprise, and what the law in effect has done is to enforce rights and duties appropriate for collective activity. Cf. *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344; *Puerto Rico* v. *Russell & Co.,* 288 U. S. 476. It has done so largely by assimilating corporations to natural persons. The long, tortuous evolution of the methods whereby foreign corporations gained access to courts or could be brought there, is the history of judicial groping for a reconciliation between the practical position achieved by the corporation in society and a natural desire to confine the powers of these artificial creations.[2]

It took half a century of litigation in this Court finally to confer on a corporation, through the use of a fiction,[3] citizenship in the chartering state for jurisdictional purposes. Compare *Lafayette Ins. Co.* v. *French,* 18 How. 404 with *Hope Ins. Co.* v. *Boardman,* 5 Cranch 57. Throughout, the mode of thought was metaphorical. The classic doctrine was that a corporation "must dwell in the place of its creation, and cannot migrate to another sovereignty." *Bank of Augusta* v. *Earle,* 13 Pet. 519, 588. Logically applied, this theory of non-migration prevented suit in a non-chartering state, for the corporation could not be there.[4] And such was the practice of the circuit courts[5] until the opinion of Chief Justice Waite in *Ex parte Schollenberger,* 96 U. S. 369, displaced metaphor with common sense. The essential difference

---

[2] See Henderson, "The Position of Foreign Corporations in American Constitutional Law," *passim,* and especially the illuminating analysis, pp. 163–194.

[3] See Gray, "The Nature and Sources of the Law," 184, and Henderson, *op. cit. supra,* note 2, pp. 50–76.

[4] See *St. Clair* v. *Cox,* 106 U. S. 350, 355.

[5] "We are aware that the practice in the circuit courts generally has been to decline jurisdiction in this class of suits." 96 U. S. 369, 378.

between the practice which Mr. Justice Nelson [6] initiated at circuit and the decision in *Schollenberger's* case was not a matter of technical legal construction, but a way of looking at corporations. Men's minds had become habituated to corporate activities which crossed state lines. The fact that corporations did do business outside their originating bounds made. intolerable their immunity from suit in the states of their activities. And so they were required by legislatures to designate agents for service of process in return for the privilege of doing local business. That service upon such an agent, in conformity with a valid state statute, constituted consent to be sued in the federal court and thereby supplanted the immunity as to venue, was the rationale of *Schollenberger's* case.

To be sure, that case arose under the Judiciary Act of 1875, 18 Stat. 470, the language of which differed from the Act of 1887, now § 51 of the Judicial Code. The earlier provision was as follows: "And no civil suit shall be brought before either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, or in which he shall be found . . ." The Act of 1887 omitted the words "in which he shall be found." But, of course, the Phoenix and the Clinton Insurance Company in *Ex parte Schollenberger, supra,* were not geographically "found" in Pennsylvania, and Chief Justice Waite so recognized. They were "found" in the Eastern District of Pennsylvania only in a metaphorical sense, because they had consented to be sued there by complying with the Pennsylvania law for designating an agent to accept service. Not less than three times does the opinion point

---

[6] *Day* v. *Newark India-Rubber Mfg. Co.,* 1 Blatch. 628; Fed. Cas. No. 3,685; *Pomeroy* v. *New York, N. H. & H. R. Co.,* 4 Blatch. 120; Fed. Cas. No. 11,261. Both these cases were decided by Mr. Justice Nelson, on circuit.

out that the corporation gave "consent" to be sued; and because of this consent the Chief Justice added that the corporation was "found" there. But the crux of the decision is its reliance upon two earlier cases, *Railroad Company* v. *Harris,* 12 Wall. 65 and *Lafayette Ins. Co.* v. *French,* 18 How. 404, recognizing that "consent" may give "venue." The Phoenix and the Clinton Insurance Company consented not to be "found" but to be sued. Since the corporation had consented to be sued in the courts of the state, this Court held that the consent extended to the federal courts sitting in that state. As to diversity cases, Congress has given the federal courts "cognizance, concurrent with the courts of the several States." The consent, therefore, extends to any court sitting in the state which applies the laws of the state.[7]

The notion that the 1887 amendment, by eliminating the right to sue a defendant in the district "in which he shall be found," was meant to affect the implications of a consent to be sued—implications which were the basis of the *Schollenberger* decision—derives from a misapplication of the purpose of Congress to contract diversity jurisdiction, based upon a misunderstanding of the legislative history of the 1887 amendment.[8] The deletion of "in which he shall be found" was not directed toward any change in the status of a corporate litigant. The restriction was designed to shut the door against service of process upon a natural person in any place where he might be caught. It confined suability, except with the

---

[7] "While the Circuit Court may not be technically a court of the Commonwealth, it is a court within it; and that, as we think, is all the legislature intended to provide for." 96 U. S. 369, 377. See *Madisonville Traction Co.* v. *Mining Co.,* 196 U. s. 239, 255–56. Cf. *Louisville & N. R. Co.* v. *Chatters,* 279 U. S. 320, 329.

[8] A cognate misconception as to the purpose of the Act of 1887–88 in contracting the jurisdiction of the circuit courts underlay the decision in *Ex parte Wisner,* 203 U. S. 449, overruled in *Lee* v. *Chesapeake & Ohio Ry. Co.,* 260 U. S. 653, 659.

172

defendant's consent, to the district of his physical habitation. Insofar as the 1887 legislation sheds any light upon the status of a corporate litigant in diversity suits, its significance lies outside the omission of the "he shall be found" clause. The form in which that Act passed the .House of Representatives contained a provision, wholly distinct from the general venue section, restricting the growing volume of litigation drawn to the federal courts by the fiction of corporate citizenship.[9] It prohibited resort to the federal courts by foreign corporations authorized to do a local business. The Senate rejected, as it had done upon three previous occasions, this House proposal.[10] But the bill, as it left the House, also contained the venue provision, with its omission of the "found" clause. It would be strange indeed if the House in § 1 had dealt with the "venue" of suits against corporate litigants who, like those involved in the *Schollenberger* case, by § 3 of the same bill were completely barred from the federal courts. It would be stranger still if, after passing a drastic measure curtailing resort by foreign corporations to the federal courts, the House had only succeeded in giving discriminatory freedom to foreign corporations—discriminatory in that, by nullifying the significance of consent through obedience to state law to be sued in the federal courts, it would allow a

[9] The Culberson Bill, which passed the House in 1887, was H. R. 2441, 49th Cong., 1st Sess. It provided in its original form that the lower federal courts should not take "cognizance of any suit" between. "a corporation created or organized by or under the laws of any State and a citizen of any State in which such corporation at the time the cause of action accrued may have been carrying on any business authorized by the law creating it. . . ." There were likewise provisions forbidding removal of such suits to the lower federal courts. See 18 Cong. Rec. 613; H. Rep. No. 1078, 49th Cong., 1st Sess.

[10] 10 Cong. Rec. 1304–1305; 14 Cong. Rec. 1270; 15 Cong. Rec. 4909.

foreign corporate defendant freedom either to remain in the state courts or to remove to a federal court.

And so, after the Act of 1887 and despite its elimination of "in which he shall be found" from the Act of 1875, lower federal courts continued to apply the doctrine of *Schollenberger's* case by considering the designation of an agent for service of process an effective consent to be sued in the federal courts.[11] This practice in the lower federal courts continued until 1892, when *Southern Pacific Co.* v. *Denton,* 146 U. S. 202, was decided. But that case involved an entirely different situation. The Court was there concerned with a Texas statute which not merely regulated procedure for suit but sought to deny foreign corporations access to the federal courts. This Court held the act unconstitutional, as the Texas court had in fact already done.[12] Inasmuch as the Texas act was found to be void, it "could give no validity or effect to any agreement or action of the corporation in obedience to its provisions."[13] To be sure, the Court went on to interpret the agreement "if valid"[14] and to suggest that had it been valid the agreement might have subjected the corporation to jurisdiction "so long as the Judiciary Acts of the United States allowed it to be sued in the district in which it was 'found.'"[15] Such, as we

---

[11] *Riddle* v. *New York, L. E. & W. R. Co.,* 39 F. 290 (C. C., W. D. Pa., 1889); *Consolidated Store-Service Co.* v. *Lamson Consol. Store-Service Co.,* 41 F. 833 (C. C. Mass., 1890) approvingly cited in *Haight & Freese Co.* v. *Weiss,* 156 F. 328 (C. C. A. 1st, 1907).

[12] *Texas Land & Mortgage Co.* v. *Worsham,* 76 Tex. 556.

[13] 146 U. S. at 207.

[14] 146 U. S. at 207.

[15] 146 U. S. at 207. The *Denton* case was based on *Shaw* v. *Quincy Mining Co.,* 145 U. S. 444, in which there was no consent derivable from the designation of an agent for service. Both opinions were written by Mr. Justice Gray, who later accurately delimited the scope of the holdings in both the *Shaw* and the *Denton* cases. *In re Keasbey & Mattison Co.,* 160 U. S. 221, 229. The decisive difference be-

have seen, was not the true basis of the decision in *Schollenberger's* case. As decisions, the two cases are wholly consistent. But, disregarding the situation before the Court in the *Denton* case—the absence of any valid consent to be sued because of the invalidity of the statute by which the alleged "consent" was obtained— several of the lower courts have taken language from the *Denton* opinion and have made it govern situations where valid consent did exist because given in conformity with the provisions of a valid statute.[16] Other courts have adhered to the practice established by *Schollenberger's* case.[17] We deem this practice sound, and it controls the present case.

In conformity with what is now § 210 of the General Corporation Law of New York,[18] Bethlehem designated

---

tween the present case and *In re Keasbey & Mattison Co.*, is that in the latter case the designation under state law which is the basis of consent had in fact not been made. But the requirement of "residence" in the Act of 1887 is as much satisfied by a consent to be sued as was the requirement "to be found" in the 1875 Act satisfied by such a consent.

[16] *Platt* v. *Massachusetts Real Estate Co.*, 103 F. 705 (C. C. Mass., 1900); *Hagstoz* v. *Mutual Life Ins. Co.*, 179 F. 569 (C. C. E. D. Pa., 1910); *Beech-Nut Packing Co.* v. *P. Lorillard Co.*, 287 F. 271 (S. D. N. Y., 1921); *Jones* v. *Consol. Wagon Co.*, 31 F. 2d 383, 384 (D. Idaho, 1929); *Kerfoot & Co.* v. *United Drug Co.*, 38 F. 2d 671 (D. Del., 1930); *Standard Stoker Co.* v. *Lower*, 46 F. 2d 678 (D. Md., 1931); *McLean* v. *Mississippi*, 96 F. 2d 741 (C. C. A. 5th, 1938); *Gray* v. *Reliance Ins. Co.*, 24 F. Supp. 144 (W. D. La., 1938); *Hamilton Watch Co.* v. *George W. Borg Co.*, 27 F. Supp. 215 (N. D. Ill., 1939); *Toulmin* v. *James Mfg. Co.*, 27 F. Supp. 512 (W. D. N. Y., 1939). *Cf. Heine Chimney Co.* v. *Rust Engineering Co.*, 12 F. 2d 596 (C. C. A. 2nd, 1926).

[17] *Shainwald* v. *Davids*, 69 F. 704 (N. D. Cal., 1895); *Dodge Mfg. Co.* v. *Patten*, 23 F. 2d 852 (D. Ind., 1928), aff'd 60 F. 2d 676 (C. C. A. 7th, 1932); *Oklahoma Packing Co.* v. *Oklahoma Gas & Elec. Co.*, 100 F. 2d 770 (C. C. A. 10th, 1938).

[18] Originally enacted as c. 687, Laws of 1892, pp. 1805–1806.

"William J. Brown as the person upon whom a summons may be served within the State of New York." The scope and meaning of such a designation as part of the bargain by which Bethlehem enjoys the business freedom of the State of New York, have been authoritatively determined by the Court of Appeals, speaking through Judge Cardozo: "The stipulation is, therefore, a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent. He is made the person 'upon whom process against the corporation may be served'. . . . The contract deals with jurisdiction of the person. It does not enlarge or diminish jurisdiction of the subject-matter. It means that whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person." *Bagdon* v. *Philadelphia & Reading C. & I. Co.,* 217 N. Y. 432, 436–7. A statute calling for such a designation is constitutional, and the designation of the agent "a voluntary act." *Pennsylvania Fire Ins. Co.* v. *Gold Issue Mining Co.,* 243 U. S. 93.

In finding an actual consent by Bethlehem to be sued in the courts of New York, federal as well as state, we are not subjecting federal procedure to the requirements of New York law. We are recognizing that "state legislation and consent of parties may bring about a state of facts which will authorize the courts of the United States to take cognizance of a case." *Ex parte Schollenberger, supra,* at 377. The judgment below is

*Reversed.*

MR. JUSTICE ROBERTS, dissenting.

The Circuit Court of Appeals, in a careful and discriminating opinion,[1] has held that to deny the respondent's motion to dismiss it from the suit would be to dis-

---

[1] 103 F. 2d 765.

regard the long settled construction of § 51 of the Judicial Code and the equally well settled application of that section. I think its judgment should be affirmed.

Whatever may be said in support of the original adoption of a different rule, it has been the law for a century that, as respects the jurisdiction of the federal courts over a corporation in diversity of citizenship cases, the corporation is a citizen and resident of the state of incorporation and of no other state. I do not understand the court's opinion to repudiate the rule.

The statute which is now § 51 of the Judicial Code took its present form in 1888. In 1892 the court held, in *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444, 453, that, under the statute, "a corporation, incorporated in one State only, cannot be compelled to answer, in a Circuit Court of the United States held in another State in which it has a usual place of business, to a civil suit, at law or in equity, brought by a citizen of a different State." This construction has been followed in this court without deviation and with practical unanimity by the lower federal courts.[2]

At the next term, in *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, 205, 207, the ruling was reaffirmed in a case where the defendant had registered as a foreign corporation under a state law and, as a condition of registration, had agreed that service of process might be made upon a designated agent.

[2] *In re Keasbey & Mattison Co.*, 160 U. S. 221; *Macon Grocery Co.* v. *Atlantic Coast Line R. Co.*, 215 U. S. 501; *Ladew* v. *Tennessee Copper Co.*, 218 U. S. 357; *Male* v. *Atchison, T. & S. F. Ry. Co.*, 240 U. S. 97; *General Investment Co.* v. *Lake Shore Ry. Co.*, 260 U. S. 261, 271; *Seaboard Rice Milling Co.* v. *Chicago, R. I. & P. Ry. Co.*, 270 U. S. 363; *Luckett* v. *Delpark, Inc.*, 270 U. S. 496; *Burnrite Coal Co.* v. *Riggs*, 274 U. S. 208, 211. The decisions in the federal courts are cited and discussed by the Circuit Court of Appeals, 103 F. 2d 767.

The earlier Act of 1875 provided that no civil suit could be brought against a defendant in a United States court "in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving such process . . ."

*Ex parte Schollenberger,* 96 U. S. 369, applied that earlier statute. The court held that a foreign corporation which had registered and consented to the service of process upon a designated agent had thereby agreed "to be found" within the state and might therefore be impleaded in a federal court sitting in the state although it was not a citizen or a resident of the state. The case was cited in the opinions in both the *Shaw* and the *Southern Pacific* cases. In the latter the court said, referring to the foreign corporation's agreement as to service: (pp. 207-8) "It might likewise have subjected the corporation to the jurisdiction of a Circuit Court of the United States held within the State—so long as the Judiciary Acts of the United States allowed it to be sued in the district in which it was found. . . . But such an agreement could not, since Congress (as held in *Shaw* v. *Quincy Mining Co.* above cited) has made citizenship of the State, with residence in the district, the sole test of jurisdiction in this class of cases, estop the corporation to set up non-compliance with that test, when sued in a Circuit Court of the United States."

*In re Keasbey & Mattison Co.,* 160 U. S. 221, the court held (p. 228): "Under the provision of that act [the earlier act of 1875], which allowed a defendant to be sued in the district of which he was an inhabitant, or in that in which he was found, a corporation could doubtless have been sued either in the district in which it was incorporated, or in any district in which it carried on business and had a general agent." For this statement the court cited *Ex parte Schollenberger, Shaw* v. *Quincy*

*Mining Co.,* and *Southern Pacific Co.* v. *Denton.* The opinions in the last two, and that in the *Keasbey* case, were written for the court by Mr. Justice Gray, who summed up their effect by saying: "And it is established by the decisions of this court that, within the meaning of this act, a corporation cannot be considered a citizen, an inhabitant or a resident of a State in which it has not been incorporated; and, consequently, that a corporation incorporated in a State of the Union cannot be compelled to answer to a civil suit, at law or in equity, in a Circuit Court of the United States held in another State, even if the corporation has a usual place of business in that State."

This interpretation of § 51 has since remained unchanged. Congress must have known of and acquiesced in the courts' construction of the section, particularly as there have been efforts to amend it, and no alteration has been adopted.

Upon principle, and under the authorities, the mere fact that service of process valid under state law can be had on an officer or agent of a foreign corporation doing business within the state is irrelevant; for although the corporation may be served in conformity to local law, it cannot be compelled to try its case in a federal court sitting in the state. I do not understand the opinion of the court to hold to the contrary.

But it is said that registration and designation of an agent upon whom service may be made under compulsion of state law amounts to a waiver of the requirements of § 51 as to venue, or to a consent to be sued in a federal court sitting within the state.

As has been shown by quotation from the opinion, this contention was made in *Southern Pacific Co.* v. *Denton, supra,* and was overruled. The holding was one of the alternative grounds of decision. The *Southern Pacific*

case settled the application of § 51, in the circumstances here disclosed, and the decision has never been qualified or overruled. The lower federal courts have understood and applied that decision with practical uniformity to enable the foreign corporation to contest the venue of suits against it.[3]

I see no reason at this late day to attribute a new effect to the statute when Congress has not seen fit to express a view contrary to that embodied in this court's construction of the law; though this might at any time be done. The principle of *stare decisis* seems to me to make against such a change.

The court below has analyzed the applicable New York statute and has satisfactorily demonstrated that it deals with service of process on foreign corporations in the courts of New York. The state could not, by its laws, affect the jurisdiction of federal courts or the venue of suits therein,—a matter solely within the control of Congress.

The CHIEF JUSTICE and MR. JUSTICE MCREYNOLDS join in this opinion.

---

[3] Some of the cases are cited by the Circuit Court of Appeals in its opinion. 103 F. 2d 769.