## DETACHABLE BIT. CO. v. TIMKEN ROLLER BEARING CO.

### No. 809.

District Court, E. D. New York.

Feb. 28, 1940.

Pennie, Davis, Marvin & Edmonds, of New York City, for plaintiff.

Barber, Giddings & Grunden, of New York City, for defendant.

BYERS, District Judge.

Motion pursuant to special appearance to quash service of summons and to dismiss the complaint, because the latter does not disclose jurisdiction over the defendant, or that venue is properly laid in this court; or, in the alternative, to quash service and dismiss so much of the complaint as relates to the alleged infringement of letters patent, since the complaint fails to disclose jurisdiction on the part of this court in respect to alleged infringement, and because the complaint fails to disclose that venue in respect of infringement can be laid in this court.

That the motion is one contemplated by Rule 12, Paragraph b, of the Federal Rules of Civil Practice, 28 U.S.C.A. following section 723c, appears from the text thereof.

The complaint was filed on January 16, 1940, on which day it was also verified, probably in deference to Rule 65, although no temporary restraining order is sought.

The plaintiff is a Delaware and the defendant an Ohio corporation, and as to the latter a certificate of authority to do business in this state is alleged to have been issued on January 3, 1938, and, rather cryptically, that "defendant is now engaged in business pursuant thereto".

Paragraph 4 is: "That defendant, The Timken Roller Bearing Company, has consented to be sued in the courts of New York, federal and state, and has appointed the Secretary of State of the State of New York as its agent to receive service of process in suits therein by designation pursuant to Section 210 of the General Corporation Law of New York [Consol.Laws N.Y.C. 23] executed by it on the 23rd day of December, 1937, and filed with the Secretary of State of New York."

A return by the U. S. Marshal for the Northern District of New York recites service of the summons and complaint upon the defendant by handing true and correct copies to a Deputy Secretary of State on January 19, 1940.

The statute indicated in the quoted paragraph of course does not refer in terms to federal courts in New York; it makes the Secretary of State the agent "upon whom all process in any action or proceeding against it may be served within this state".

The defendant has filed an affidavit, verified February 19, 1940, by its secretary and treasurer; that it "has no regular and established place of business within the limits of the United States District Court for the Eastern District of New York".

The Supreme Court decided on November 22, 1939 (Neirbo Company et al. v. Bethlehem Shipbuilding Corporation, 60 S. Ct. 153, 84 L.Ed. —— ), that a consent filed under said Section 210 constituted a waiver of objection to the venue provisions of Section 51 of the Judicial Code, and that in a suit based upon diversity of citizenship (28 U.S.C. § 112, 28 U.S.C.A. § 112) a motion to quash service and to dismiss the action was improperly granted, where service had been made within the state of New York, pursuant to statutory designation of an agent to accept service, on the part of a defendant Delaware corporation.

The argument of this motion by both parties was directed to the question of whether the Neirbo decision should control in a patent infringement suit, the applicable provisions being found in Section 48 of the Judicial Code (28 U.S.C. § 109, 28 U.S.C.A. § 109) and not in Section 51 (Id. § 112, 28 U.S.C.A. § 112). The former deals in terms with jurisdiction, but in General Electric Co. et al. v. Marvel Rare Metals Co., 287 U.S. 430, at page 435, 53 S.Ct. 202, at page 204, 77 L.Ed. 408, is thus described: "Section 48 relates to venue. It confers upon defendants in patent cases a privilege in respect of the places in which suits may be maintained against them."

As the complaint is presently viewed, it is thought that inquiry into the interesting question of whether a consent to be sued for patent infringement in a federal court sitting in New York can rest upon compliance by a foreign corporation with the requirements of Section 210 of the General Corporation Law of New York, must wait upon an understanding of the issues presented by the complaint.

Turning to that document, it is seen that the plaintiff's corporate predecessor is said to have acquired reissue patents No. 16061 and No. 17557 for improvements in mining and rock drills having detachable bits whereby the cost of employing one-piece integral drill rods in accord with prior practice was reduced.

That such predecessor expended large sums of money in research and development, and in July, 1929, entered into a joint venture with defendant, a producer of steels of the type required by plaintiff, for their joint benefit. That during the ensuing year, it imparted to the defendant confidential data and information pertaining to its product, processes and marketing activities, in furthering the joint venture. That the latter came to an end by the defendant's choice on or about March 1, 1930.

That, beginning about April 1, 1932, the defendant began to compete with plaintiff's predecessor in the manufacture and sale of detachable bit rock drills and bits, the latter being designed to fit drill rods of plaintiff's predecessor's manufacture, being enabled to do so entirely by using the experience disclosed by plaintiff's predecessor, to it, in furtherance of the joint venture.

That defendant caused its employees to procure patents upon improvements in detachable bit rock drills and defendant obtained patents Nos. 1,876,565, 1,953,095, 2,052,011 and 2,052,019, as assignee of its employees; that said patents "are based on and developed from, the information obtained by defendant from said Detachable Bit Corporation of America (plaintiff's predecessor) in confidence and through confidential relations as aforesaid; and that plaintiff is entitled to the benefits of the protection afforded by said Letters Patent".

That the defendant's present manufacture and sale constitute infringement of all six patents which have been listed, and as to the last four the allegation is: "which said patents should have been, pursuant to the obligations and duties of defendant, assigned to" plaintiff's predecessor.

The giving of notice to the public as to reissue patents 16,061 and 17,557, and to the defendant as to the same patents, is averred, and that the defendant failed to desist "from such infringement and is now continuing the same, and threatens," etc.

The relief sought is an injunction against the sale of detachable bit rock drills embodying the inventions disclosed in the said six patents, and restraining, during the term of those patents, the manufacture and sale for its own profit, by defendant, of detachable bit rock drills of the type now manufactured or of any character or type

634

which will compete with the products of plaintiff's predecessor.

An assignment of the four patents last enumerated together with all rights of recovery for past infringement.

A temporary injunction (none has been sought).

A decree for past profits generally and for the six years last past, arising from sales of bit rock drills infringing said six patents, with treble damages as to the latter, and an accounting.

Thus it appears that the issues presented are of dual character, and interwoven: There is no charge that the last four patents, owned by the defendant, infringe the first two, which are the property of the plaintiff.

There is an assertion that the four later patents are equitably the property of the plaintiff because they embrace improvements in detachable bit rock drills "based on and developed from" the confidential information so obtained (par. 21). There is no allegation that anything in the four later patents constitutes an appropriation of anything taught by the plaintiff's two patents.

Paragraph 22 avers that the bit rock drills and equipment so made and sold by defendant "constitute infringement of" all six patents which have been recited.

From this paraphrase of the plaintiff's cause, the necessity is made apparent that the plaintiff must prove its equitable ownership of the last four patents, as the foundation for the balance of its case.

If the plaintiff succeeds in that undertaking, and ownership of the last four patents is awarded to it, there will be no real issue of infringement as to them, because all that the defendant has done under those patents will have been, in the eyes of the law, as the fiduciary of the plaintiff.

Perhaps if the defendant prevails on that aspect of the case, the plaintiff can still offer evidence to establish infringement of the first two patents. That is not clear because the infringement aspect of the case seems to rest upon the assertion that all patents constituting the group of six have been infringed, from which it could be argued plausibly that no one or two, standing alone, could be so considered.

There must be some reason why no clear issue of infringement has been tendered as to the two patents now the property of the plaintiff, and as to this there is no present necessity for making inquiry.

Sufficient has been shown to indicate that, in the ordinary and accepted sense, this is not a patent infringement case in the present state of the plaintiff's pleading, but there is pleaded an equitable cause the outcome of which will depend upon the extent to which the plaintiff can substantiate its allegations of breach by the defendant of the obligations said to have been undertaken in behalf of a joint venture.

If the issues tendered by the plaintiff's bill have been correctly portrayed, it results that the question of venue should be decided according to Section 51 of the Judicial Code, and not Section 48, and accordingly the decision in the Neirbo case, supra, requires that the defendant's motion, in both aspects, be denied, and the order will so provide.

Settle order.