**BOWLES, Adm'r, Office of Price Administration, v. L. D. SCHREIBER & CO., Inc., et al.**

Civil Action No. 622.

District Court, D. Minnesota, Third Division.

Aug. 25, 1944.

Ralph M. McCareins, Dist. Enforcement Atty., of Minneapolis, Minn., and Harris J. Nuernberg, Enforcement Atty., of St. Paul, Minn., for plaintiff.

Harold L. Perlman, of Chicago, Ill., and William H. Oppenheimer and Stan Donnelly, both of St. Paul, Minn. (Gottlieb & Schwarts, of Chicago, Ill., and Oppenheimer, Hodgson, Brown, Donnelly & Baer, of St. Paul, Minn., on the brief), for defendants.

BELL, District Judge.

This is an action by the Administrator of the Office of Price Administration against L. D. Schreiber & Co., Inc., a Delaware corporation (hereinafter called Schreiber), and The Marketing Association of America, a Wisconsin cooperative association (hereinafter called Association), for an injunction enjoining alleged violations of the Emergency Price Control Act of January 30, 1942, 56 Stat. 33, 50 U.S.C.A. Appendix, § 925, as amended by the act of October 2, 1942, 56 Stat. 765, 50 U.S.C.A. Appendix, §§ 901, 961 et seq. The defendants appeared specially and presented a motion to dismiss.

Section 205(a) of the Act provides:

"Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices * * *."

Section 205(c) of the Act provides:

"The district courts shall have jurisdiction of criminal proceedings for violations of section 4 of this Act, and, concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act. Such criminal proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred. Except as provided in section 205(f) (2), such other proceedings may be brought in any district in which any part of any act or transaction constituting the violation occurred, and may also be brought in the district in which the defendant re-

sides or transacts business, and process in such cases may be served in any district wherein the defendant resides or transacts business or wherever the defendant may be found. * * *"

█ Under these provisions of the Act, the Administrator may bring an action for an injunction against anyone who has engaged or is about to engage in any acts or practices violating the law in any district (1) in which any part of any act or transaction constituting the violation occurred, (2) where the defendant resides, or (3) where the defendant transacts business.

The defendant Schreiber on December 29, 1943, made application as a foreign corporation for a certificate of authority to transact business in Minnesota and such certificate thereafter was issued. The defendant designated a registered agent in Minnesota for service of process as provided by the laws of that state. The designated agent of the defendant was served with process on June 29, 1944. Service was made on the Association July 6, 1944, by serving a copy of the Summons and Complaint on an officer of the corporation at Green Bay, Wisconsin. The defendants appeared specially and challenged the jurisdiction of the court on the grounds (1) improper venue and (2) lack of jurisdiction over the person of the defendants.

██ The defendants are not residents of the state of Minnesota; consequently, we are primarily concerned at this point with whether at the time this action was commenced they were transacting business in said state. Schreiber was qualified to transact business in Minnesota and designated a registered agent for service of process. This defendant since December 29, 1943, continuously operated a large cold storage business at Minneapolis, Minnesota, under the name of Minneapolis Cold Storage Company in which it at all times stored large quantities of dairy products, meats, eggs, fruits, vegetables, and other commodities. It purchased large quantities of eggs in 1944 from the DeSoto Creamery and Produce Company of Minneapolis and likewise purchased large quantities of butter in Minnesota. Since the date mentioned it has had an active bank account at a Minneapolis bank with balances as high as $1,640,000. It made loans at the bank of $100,000 to $200,000 and deposited collateral for security. Large ration point deposits were made at the bank by various coopera-

tives to the account of Schreiber. In fact, it is admitted that Schreiber was transacting business in Minnesota; but the contention is made that such business is not germane to the subject matter of the complaint and, therefore, does not subject Schreiber to the process of this court. The extent and character of the business transacted by this defendant in Minnesota has been carefully considered in the light of the showing made and the contention cannot be sustained. Moreover, the designation by a foreign corporation, in conformity with a valid statute of a state and as a condition of doing business within the state, of an agent upon whom service of process may be made, is an effective consent to be sued in the federal courts of that state. Neirbo Co. v. Bethlehem Shipbuilding Corporation, 308 U. S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L. R. 1437. The conclusion is inevitable that the venue is properly made in this court.

Section 4(a) of the Act makes it unlawful to offer, solicit, attempt or agree to buy or receive any commodity in violation of any regulation or order under Section 2, or of any price schedule. The Regulations prohibit payment of patronage dividends in addition to the maximum price by any marketing cooperative association which does not operate on a cooperative basis for the purposes of marketing the commodities of its patronage solely for their mutual benefit, or is controlled with respect to finances, policy, payment of patronage dividends, employment and compensation of personnel or agents, or in any other way by any person. Supplementary Order Number 84.

The plaintiff has alleged and contends that Association is a controlled cooperative within the inhibition of Supplementary Order 84. The plaintiff contends that it was organized and financed by Schreiber and is absolutely controlled and dominated by it and is merely a subsidiary or an instrumentality of Schreiber; that it is a device to pay prices for butter in excess of the maximum price and thus divert to itself, in abnormal market conditions, butter in large quantities in violation of the regulations. It appears that one L. D. Schreiber is the president of Schreiber; that both defendants occupy the same place of business at Chicago, Illinois; that Schreiber organized Association and has financed it; that on or about February 18, 1943, Schreiber caused Association to adopt by-laws authorizing the latter to enter into a contract with the

former constituting Schreiber the sole and exclusive sales agent for all agricultural products received or controlled by Association; that on said date a contract was executed and under which Schreiber was given absolute power for a period of five years, unless sooner terminated by Schreiber, to purchase and sell commodities on terms and conditions fixed by Schreiber, borrow money and pledge the commodities of Association as security. This contract gave Schreiber access to the books, records, files and offices of Association and under it Schreiber transferred certain of its agents and employees to the staff of Association. In other words a showing has been made that Schreiber, by virtue of the contract if for no other reason, has complete control of Association and all commodities shipped to it.

There is evidence that anyone could become a member of Association merely by making a shipment of butter to it; that immediately on receipt of the butter the ceiling price was paid by Schreiber plus patronage dividends later to be determined and paid; that promises to make such payments were made by agents in Minnesota and in correspondence both before and after the effective date of Supplementary Order No. 84, and that Association has paid and in the future intends to pay patronage dividends in Minnesota and has sent agents to creameries in Minnesota and other states to solicit shipments of butter; that by reason of the activities of the defendants in offering to pay to creameries, through the device of patronage dividends, prices for butter in excess of established maximum prices, the industry is being disrupted, unfair competition results and the purposes of the Act are being thwarted.

Association claimed the right under the regulations to pay patronage dividends, as shown by its letter to a creamery at Blooming Prairie, Minnesota, dated February 16, 1944, in which it said in part:

"We mailed you yesterday copy of the new order which states specifically that we can distribute earnings to our members and our members can accept such dividends without any violation of ceiling prices, if all requirements are met in order No. 84."

In a letter to the same creamery dated February 21, 1944, Association in part said:

"Although we do not admit that the OPA has the right to stop the payment of monthly dividends, we have decided to conform to this regulation and hereafter will pay dividends only at intervals of not less than six months. It seems to us that this regulation is very clear and states plainly that cooperative associations have the right to pay and patrons have the right to receive patronage dividends even though as a result the patrons receive more than the ceiling prices * * *."

Association in a letter "To Our Members" dated March 3, 1944, in part said:

"We have just finished drawing up our regular monthly figures and know you will be interested to learn the operating results of your association for February. After advancing to our members the ceiling price for the butter we received from them, and after payment of all expenses, the estimated net profit shown is over $\frac{3}{4}\cancel{c}$ per pound on all free bulk butter and over $\frac{3}{8}\cancel{c}$ per pound on all free print butter. These earnings of course are yours, but we cannot distribute them to you monthly as we have done in the past, because Supplemental Order 84 issued by the O.P.A. prevents us from paying dividends any oftener than 'at the end of intervals of not less than six months.' We wrote our members about this when the order was issued and want of repeat what we said at that time—that it is the intention of your directors to distribute any funds available for patronage dividends as often as the O.P.A. regulations will permit."

Association reiterated its intention to comply with the law; but obviously it was contending that it had a right under the law and the regulations to pay patronage dividends. It represented it was making sufficient profits to pay such dividends and would pay them in the future. It claimed to be a cooperative in fact which is strongly denied by the plaintiff. Thus a controverted question of fact is presented.

The court, of course, is not deciding the merits of the case or making a determination of the facts, except as the showing affects the issues presented by the motion. If the facts alleged and presented by the showing can be proved, Association is not a bona fide cooperative entitled to pay patronage dividends but is a controlled organization used by Schreiber to evade the provisions of the Act and the Regulations and has committed acts in Minnesota in violation of the law. Schreiber, of course, must not be permitted to do in the name of Association what is unlawful for it to do in its own name. The law has opened the

way for cooperatives in fact to pay patronage dividends, but this does not extend the privilege to any organization cooperative in name only to distribute such dividends and thus pay over-ceiling prices for commodities.

The court has jurisdiction of both defendants, and their motions should be overruled.