**HARRIS–INTERTYPE CORPORATION,**
**Plaintiff,**

v.

**PHOTON, INC., and Regency Thermographers, a partnership composed of Bernard Busch, Benjamin Cohen; William Franzblau and Dr. Robert Busch as Trustees; and Adolph Stamper and Herman Haken, as Trustees, Defendants.**

United States District Court
S. D. New York.
June 8, 1960.

Curtis, Morris & Safford, New York City, Marechal, Biebel, French & Bugg, Dayton, Ohio, Lawrence B. Biebel, and Dailey L. Bugg, Dayton, Ohio, of counsel, for plaintiff.

Lundgren, Lincoln & McDaniel, New York City, Kenway, Jenney, Witter & Hildreth, Boston, Mass., Clarence S. Lyon, and Melvin R. Jenney, Boston, Mass., of counsel, for defendants.

HERLANDS, District Judge.

Three motions are before the court:

1. Motion by plaintiff for an order restraining defendant Photon, Inc. (hereinafter "Photon") from continuing a declaratory judgment action in the United States District Court for the District of Massachusetts (Civil Action No. 60–219–M), commenced on March 30, 1960 against Harris-Intertype Corporation, the plaintiff at bar herein (Motion No. 88–May 19, 1960);

2. Motion by defendant Regency Thermographers (hereinafter "Regency") for a stay of the action at bar, pending a final decision in the Massachusetts declaratory judgment action (Motion No. 89–May 19, 1960); and

3. Motion by defendant Photon for either a dismissal or a transfer of the action at bar to the District of Massachusetts (Motion No. 90–May 19, 1960).

Motion No. 88 is denied. Motion No. 89 is granted. Motion No. 90 is granted, and the action at bar is ordered transferred to the District of Massachusetts. So ordered.

Certain basic points of fact and law are common to the three motions. The action at bar is hereinafter referred to as "the New York action"; the action in the District of Massachusetts is hereinafter referred to as "the Massachusetts action."

The New York action, commenced on March 15, 1960, is for infringement of two patents owned by plaintiff. In that action the two defendants are Photon, the manufacturer of the allegedly infringing device, and Regency, one of

Photon's customers and a user of one of the allegedly infringing machines.

The Massachusetts action, commenced by Photon fifteen days after the institution of the New York action, is for a declaratory judgment against the plaintiff at bar.[1] The Massachusetts action seeks to have the two patents involved in the New York action declared invalid and not infringed. The Massachusetts action seeks additionally an adjudication that a third patent of plaintiff's (not involved in the New York action) is not valid and not infringed. Regency is not a party to the Massachusetts action.

According to the complaint, the patents involved in the New York action relate to phototypesetting apparatus which are photographic composing machines used in the printing industry.

Venue in actions for patent infringement is governed by 28 U.S.C. § 1400(b), which provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

■ Section 1400(b) thus is a special and specific venue provision for "patent infringement" actions. As authoritatively construed in Fourco Glass Co. v. Transmirra Products Corp., 1957, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786, a corporate defendant may properly be sued for patent infringement only: (1) in the judicial district of its incorporation; or (2) in a judicial district where it has committed acts of infringement and where it has a regular and established place of business. 28 U.S.C. § 1400(b) is the sole and exclusive provision governing venue in patent infringement actions.

Photon is a Massachusetts corporation. Therefore, it can be sued in the Southern District of New York only if it has committed acts of infringement in this District and if it has "a regular and established place of business" in this District. These requirements are in the conjunctive; both must be met in order properly to lay the venue in this District.

Photon contends that it does not have "a regular and established place of business" in the Southern District of New York. As to whether Photon has committed acts of infringement in the Southern District of New York, Photon (in its memorandum) "leaves plaintiff to its proof."

■ The first point of inquiry is whether Photon has "a regular and established place of business" in the Southern District of New York. We start with certain significantly precise allegations of the complaint, filed March 15, 1960. The complaint avers (par. 2) that defendant Photon has "a regular and established place of business" in Massachusetts and "is duly authorized to do business in the state of New York." In contrast, the complaint avers (par. 3) that defendant Regency has "a regular and established place of business * * in the Southern District of New York."

The summons and complaint were served on Photon by handing a copy to the Secretary of State of the State of New York, pursuant to Section 217 of the General Corporation Law of New York (according to the Marshal's return and the official receipt of the Secretary of State, annexed to the filed complaint).

In behalf of plaintiff, certain filed stipulations of testimony and related exhibits establish or tend to establish the following evidentiary facts:

1. Photon qualified to do business in New York State on November 27, 1950

1. It is not necesary to consider any aspect of "forum shopping." See Rayco Manufacturing Co. v. Chicopee Manufacturing Corporation, D.C.S.D.N.Y.1957, 148 F.Supp. 588, 592–593, notes 8–15. If the venue had been properly laid in the Southern District of New York, the New York action, having been filed first, would have had priority over the subsequently commenced Massachusetts action. Joseph Bancroft & Sons Co. v. Spunize Co., 2 Cir., 1959, 268 F.2d 522, 524, collecting authorities.

by filing a certificate under Section 210 of the General Corporation Law of the State of New York.[2]

2. This certificate designates the Secretary of State of New York as Photon's "agent upon whom all process in any action or proceedings against it may be served within the State of New York." The certificate recites that the place where Photon's "office within the State of New York is to be located is 120 Broadway, Room 332, New York 5, N.Y." and that "the business which it proposes to carry on within the State of New York is as follows: The sale of photographic type-composition equipment and supplies."

3. Room 332, 120 Broadway, New York 5, N.Y., is the office of the Corporation Trust Company. No business proposed to be carried on by Photon is or ever has been carried on at that address. Corporation Trust Company has never dealt with any of Photon's personnel; and it is not authorized to conduct business transactions in behalf of Photon. At no time was Corporation Trust Company subject to any direction or control by Photon with respect to the manufacture, use or sale of any of Photon's products. Corporation Trust Company did not take any part in the arrangements for display of Photon's machines at any of the displays or showings mentioned below, nor in sales or service of Photon machines. The Corporation Trust Company is engaged exclusively in rendering certain services to attorneys in behalf of corporations, including the furnishing of an office for service of process upon foreign corporations.

The Corporation Trust Company has been the agent for Photon since November 27, 1950 for the service of process, and solely to satisfy the requirements for the qualification of Photon to do business within New York State, and for no other reason.

The Corporation Trust Company does not have the name of Photon upon the door of Room 332 at 120 Broadway, and does not have the name of Photon on the building directory at 120 Broadway.

4. Although Photon is not and never has been a member of the American Newspaper Publishers Association, during the month of April in the years from 1956 to 1960, Photon had a display and sales exhibit of its photocomposing machine at the annual conventions of that Association held in the Waldorf-Astoria Hotel in this District. Photon's practice is to issue invitations to the trade and to newspapers throughout the country to witness demonstrations of the Photon machines at these conventions.

5. During September 6–12, 1959, Photon took part in the Graphic Arts Exhibition at the New York Coliseum, where it displayed its photocomposing machine in a booth and operated the machine throughout the show under conditions simulating the setting of type in page form in actual commercial practice. After the Exhibition, the machine exhibited was sent to Johnstown, Pennsylvania. Before the Exhibition, Photon mailed letters, tickets and stickers to its actual or prospective customers, advising them that the machine would be exhibited in the booth. No sales were actualy consummated during the Exhibition, according to Garth's stipulated testimony. However, the 1959 report to stockholders, Exhibit "I" attached to said testimony, states that Photon "booked a surprising volume of business" seemingly at the Graphic Arts Exhibition.

6. Following the above Exhibition, the only sale made to a purchaser in the Southern District of New York was one machine (No. 213), sold to defendant Regency. This machine—which was not the machine shown at the Exhibition—was shipped to Regency on November 6, 1959 from Cambridge, Massachusetts.

7. From April 20 to April 23, 1953, at a time when the machine was not yet in commercial production, Photon held a public showing and operation of its machine at the Waldorf-Astoria Hotel in

2. Cf. Hornstein, Corporation Law and Practice (1959) Sections 284–288.

order to demonstrate it and to promote sales of it.

8. At each of the above-mentioned exhibitions, the exhibits were installed by Photon's staff. The exhibited machines were shipped into New York City for purposes of the show and then shipped out of New York City.

According to the stipulated testimony of Bernard Busch, during trade shows and annual conventions Photon's machines have been offered for sale in New York City on many occasions to Regency and other interested parties. At the 1959 Graphic Arts Exhibition, salesmen were present on behalf of Photon actively soliciting business.

9. To date, Photon has made a total of four sales, covering seven machines, to a total of four different purchasers in this District: Yonkers Herald Statesman (2 machines), New York Times (2 machines), Time, Inc. (1 machine), and Regency (2 machines).

As to the two machines sold to Regency, the following facts appear: one machine was purchased pursuant to a letter contract mailed by Regency from New York City to Photon, which accepted it on June 14, 1956 in Massachusetts. This machine was shipped to Regency's plant in New York City in January 1957. A second machine was purchased pursuant to a letter contract sent from Massachusetts by Photon on or about October 7, 1959 and accepted on October 15, 1959 by Regency in New York. This second machine was shipped to Regency's plant in New York City in November 1959.

10. The price of new Photon photocomposing machines ranges from $50,000 to $60,000 each.

11. Photon has never maintained an account in any bank within this District.

12. Purchasers and users of Photon's machines in the New York City area have permitted Photon to exhibit those machines—as actually installed and in use in commercial operations—for demonstration to potential purchasers to interest them in Photon machines, as a means of promoting the sales thereof.

At various times potential customers were taken to those plants by Photon's representatives and were given an opportunity to see the machines in operation.

13. Photon machines are serviced by Photon's personnel (whose residences and main duties are in Massachusetts) who travel to New York City only in response to requests for service, following which servicing such personnel return to Massachusetts. On request of the user, the service man performs the service on the machine in the user's plant. To obtain such service, it is necessary to communicate with Photon's plant in Massachusetts.

14. Photon employs approximately 180 persons in Massachusetts.

Assuming *arguendo* that the evidence prima facie shows that infringing acts were committed within this District, we are not necessarily bound to conclude that the evidence also demonstrates that Photon has an established and regular place of business in this District. On the contrary, the episodic activities of Photon in this District do not measure up to the statutory criterion of a *regular* and *established* place of business in this District, which is something more than "doing business."

In Tyler Co. v. Ludlow-Saylor Wire Co., 1915, 236 U.S. 723, 35 S.Ct. 458, 459, 59 L.Ed. 808, it was held that the statutory requirement of "a regular and established place of business" in this District was not established although the alleged infringer, a Missouri corporation, had employed as its "Eastern Representative" a person who maintained headquarters here to solicit orders, and whose rent, salary and commissions, and stenographer's wages were paid in part by it. The representative was required to forward orders to the Missouri office for execution. Goods so ordered were thereafter manufactured and shipped by express to the purchaser in New York City.

The reasoning of Tyler Co., supra, was applied in Kamkap, Inc. v. Worldsbest

Industries, D.C.S.D.N.Y.1956, 140 F. Supp. 854, 856, to a set of facts that showed greater contacts within this District than those in the case at bar. Yet it was there held that the alleged infringer did not have "a regular and established place of business" in this District.

■ We come then to the next question—whether Photon, by qualifying to do business in New York, waived the requirements of the special venue statute [Section 1400(b)] and consented to be sued in this court on any cause of action, regardless of the subject matter.

The answer to this question requires consideration of Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, and the more specific question whether Neirbo and its waiver theory is applicable to patent infringement cases. This issue is the core of the controversy herein.

In Neirbo, the Supreme Court held that, in a diversity case, the designation of an agent for the service of process by a foreign corporation to qualify to do local business in New York State in conformity with Section 210 of the General Corporation Law of New York constitutes a waiver by a foreign corporation of the venue requirements of 28 U.S.C. § 112, formerly Section 51 of the Judicial Code (now 28 U.S.C. § 1391). The Supreme Court concluded (308 U.S. at page 175, 60 S.Ct. at page 158) that the designation "as part of the bargain by which Bethlehem enjoys the business freedom of the State of New York" constitutes "an actual consent by Bethlehem to be sued in the courts of New York, federal as well as state."

The subsequent judicial history of Neirbo represents an attempt by the courts to define the boundaries of the Neirbo doctrine, i. e., the kind of actions in which the designation of an agent for the service of process does or does not constitute a waiver of applicable federal statutory venue requirements. Cf. Hornstein, Corporation Law and Practice (1959) Sections 584–586.

In Bulldog Electric Products Co. v. Cole Electric Products Co., 2 Cir., 1943, 134 F.2d 545, at page 547, the Court of Appeals in dictum expressed the view that the special and specific venue requirements governing an action for patent infringement [under 28 U.S.C. (1940 ed.) Section 109, now section 1400(b)] are not waived by the designation of an agent for the service of process upon the defendant in New York, the defendant being a foreign corporation; and that, notwithstanding Neirbo, such a defendant could not be sued in a United States District Court sitting in New York State, unless the foreign corporation was either an inhabitant of the District or had infringed in the District and had there a regular and established place of business. In Bulldog, it was shown that the defendant did have a regular established place of business in the Eastern District of New York, where it was sued.

In American Blower Corp. v. B. F. Sturtevant Co., D.C.S.D.N.Y.1945, 61 F. Supp. 756, a declaratory judgment action arising out of a patent controversy, the court held that the Neirbo doctrine applied to that type of action and, hence, the designation by the defendant of the New York Secretary of State as a person upon whom process might be served within the State of New York as to any cause of action in any court in that State constituted a waiver of the venue privilege. In so holding, the court recognized the basic distinction between an action for declaratory judgment concerning the validity of patents and an action for patent infringement. [See analysis in De Luxe Game Corp. v. Wonder Products Co., D.C.S.D.N.Y.1957, 157 F.Supp. 696, 699, 700.] In recognition of that distinction, the court proceeded to declare, in dictum, that where the action is for patent infringement—and, consequently, the special venue requirements now contained in Section 1400(b) apply—the filing of the certificate with the New York Secretary of State did not constitute a waiver of the venue privilege, citing Bulldog, supra. The view expressed in

Bulldog—that the appointment of an agent for the service of process does not waive the special venue provisions of Section 48 of the [1911] Judicial Code [28 U.S.C. (1940 ed.) Section 109, now 28 U.S.C. § 1400(b)]—was approved in Carbide & Carbon Chemicals Corp. v. United States Industrial Chemicals, Inc., 4 Cir., 1944, 140 F.2d 47, 50.

Both Bulldog, supra, and Carbide & Carbon, supra, were followed in Blaw-Knox Co. v. Lederle, 6 Cir., 1945, 151 F. 2d 973, 974, where the court explicitly ruled that the rationale of Neirbo was not applicable to a patent infringement action.

What appears to be the most recent expression of the Court of Appeals for the Second Circuit is set forth in Roger v. A. H. Bull & Co., 2 Cir., 1948, 170 F. 2d 664. In that case, Judge Chase (who had written the opinion in Bulldog) re-iterated the view that the Neirbo rule did not extend to patent infringement cases; and that the special venue requirements applicable to a patent infringement action [as prescribed by Section 1400(b)] were not waived by the filing of a certificate to do business in a state and the designation of an agent for the service of process (170 F.2d at page 666). In the Roger case, an action for overtime pay under the FLSA, the Court of Appeals concluded that, since the state and federal courts have concurrent jurisdiction to enforce the provisions of the FLSA, there was a waiver of the venue provisions applicable to an action under that statute by the designation of an agent upon whom process might be served. But Judge Chase took pains to emphasize that such a designation would not constitute a waiver of venue in patent cases "because since the state courts have no jurisdiction concurrent or otherwise over such [patent] cases, the 'same law' cannot be applied in state courts" (170 F.2d at page 666).

We, therefore, conclude that the weight of authority in general and the law of this circuit in particular is that the mere qualification to do business in a state and the concomitant appointment of an agent for the service of process does *not* operate as a waiver of the special and specific venue provisions of 28 U.S.C. § 1400(b).

Since Photon has no regular and established place of business in this District, venue as to it has been improperly laid in this District. The action against it will be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1406(a).

It is to be observed that the controlling issues in this patent litigation can be fully, effectively, and expeditiously, adjudicated in the District of Massachusetts.

The motions are disposed of as indicated at the outset of this opinion.