## WARD v. STUDEBAKER SALES CORPORATION OF AMERICA.

### No. 7227.

Circuit Court of Appeals, Third Circuit.

July 8, 1940.

———◆———

Joseph E. Gold and Thomas J. Minnick, Jr., both of Philadelphia, Pa., for appellant.

J. Horace Churchman and Carl W. Funk, both of Philadelphia, Pa. (Drinker, Biddle & Reath, of Philadelphia, Pa., of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The appellee here is in the embarrassing position of the small boy in the apple orchard. The farmer has pulled the ladder from under the tree. In the case at bar, the farmer is the United States Supreme Court and it has pulled the same ladder from under the various "inferior" Federal courts.[1]

That ladder was reliance upon the Supreme Court's previous interpretation of Section 51 of the Judicial Code, 28 U.S. C.A. § 112, Southern Pacific Co. v. Denton, 146 U.S. 202, 13 S.Ct. 44, 36 L.Ed. 942. It is true that the majority of the High Court disclaim any intention of repudiation. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. To the uninitiated, and among them are included writers in learned periodicals[2] the earlier rule appears at least as an alternative ground of decision in the Denton case.

It may be observed that the writers above mentioned and their confreres are in hearty accord with the rationale of the Neirbo decision.[3] As one observes, it is a step in the "process of adjusting outmoded

---

[1] Platt v. Massachusetts Real-Estate Co., C.C.,D.Mass., 103 F. 705; McLean v. Mississippi, 5 Cir., 96 F.2d 741, 119 A.L.R. 670, certiorari denied 305 U.S. 623, 59 S.Ct. 84, 83 L.Ed. 399; Jones v. Consolidated Wagon & Machine Co., D.C.,Idaho, 31 F.2d 383, appeal dismissed 280 U.S. 519, 50 S.Ct. 65, 74 L.Ed. 589; Thomas Kerfoot & Co., Ltd., v. United Drug Co., D.C.,Del., 38 F.2d 671; Standard Stoker Co., Inc., v. Lower, D.C.,Md., 46 F.2d 678; Toulmin v. James Mfg. Co., D.C.,W.D.N.Y., 27 F.Supp. 512; Neirbo Co. v. Bethlehem Shipbuilding Corporation, 2 Cir., 103 F.2d 765; see Dobie, Federal Procedure 483; but see contra, Shainwald v. Davids, D.C.,N.D. Cal., 69 F. 704; Patten v. Dodge Mfg. Corp., D.C.,Ind., 23 F.2d 852, reversed on other grounds, 7 Cir., 60 F.2d 676; Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 10 Cir., 100 F.2d 770.

[2] Venue of Actions Against Foreign Corporations in the Federal Courts, 53 Harvard Law Review 660, 664 (note); Federal Venue Requirements For Foreign Corporations, 49 Yale Law Journal 724, 730 (note); Federal Procedure—Waiver of Venue by Foreign Corporation's Appointment of Agent to Receive Service of Process in Compliance with State Statute, 26 Virginia Law Review 516.

[3] Procedure—Federal Venue Statute—Appointment of Agent for Service of Process Pursuant to State Law as Waiver of Improper Venue—(Federal), 7 University of Chicago Law Review 397; Federal Jurisdiction—Federal Court Venue in Suits Against Foreign Corporations Within a State Permitting Such Corporations to Do Business Upon Appointment of Agent to Accept Service, 88 University of Pennsylvania Law Review 485; Courts: Federal Practice: Waiver of

juristic stereotypes to the pragmatic need of exposing these business units to suit". As all agree, it goes far toward removing the discriminatory advantage heretofore enjoyed by foreign corporations. For "the effect of the pre-Neirbo rule was usually to provide a dodge for the corporation rather than to insure an appropriate place for trial". The pundits above quoted from and cited to only regret that the United States Supreme Court did not feel free to go the whole way in abandoning these "outmoded juristic stereotypes". As a writer in the Harvard Law Review puts it:

"The aura of discredit that surrounds fictional consent, plus the doubts as to the existence of actual waiver on the facts of the Neirbo case and the problematic validity of what results in deprivation by the state of federal venue privileges might persuade an iconoclastic court with a new 'way of looking at corporations' to adopt the more adequate rationale that a corporation established in business within a district is a 'resident' there within the meaning of Section 51. Unlike fictional consent, this construction would dispel any doubts as to its applicability to causes of action arising outside the state. This simplification of the problem would necessarily be at the expense of long-settled authority." Venue of Actions Against Foreign Corporations In The Federal Courts (note), 53 Harvard Law Review 660, 664. If the court had felt so inclined, it might have written finis to the curious legal panorama presented by the attempt to fit the corporate ghost into the less spookish requirements of jurisdiction and venue.[4] The trouble may have arisen in the draftmanship of the original Judiciary Act of 1789, 1 Stat. 73. It also uses the word "inhabitant". One is reminded of two extracts from the entertaining diary of Senator Maclay: "But it was fabricated by a knot of lawyers who join here and cry to run down any person who will venture to say one word about it."

"The most trifling word catching employed us till after three o'clock." Maclay, Sketches of Debates pp. 95, 98.

The preference for judicial rather than precise amendment can only be attributable to inertia.

The appellee deprived of his ladder must essay some other support for his descent. He quite naturally hunts for it where the fictions grow thickest. The learned authors above cited have suggested certain so far unadjudicated refinements of the "consent to be sued" fiction. They suppose the designation for service of process of a state official, Oklahoma Packing Co. v. Oklahoma Gas & Electric, January 15, 1940, 308 U.S. 531, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537, rather than the actual appointment of an agent, Neirbo Co. v. Bethlehem Shipbuilding Corp., above cited. They suppose again causes of action not arising out of business done in the state requiring the appointment. They suppose further law-breaking foreign corporations which do business without registering or appointing a statutory agent. They suppose still further an appointment or designation with a stipulated reserva-

---

the Privilege Accorded to a Non-resident Corporate Defendant by the General Venue Section of the United States Judicial Code, 25 Cornell Law Quarterly 291; Corporation: Federal Venue—Designation of Process Agent in Accordance with State Statute as Consent to be Sued in Federal Court, 18 North Carolina Law Review 232; Federal Procedure: Venue in the Federal Courts in Diversity of Citizenship Cases as Affected by State Laws Requiring Foreign Corporations to Appoint an Agent for Service of Process, 28 California Law Review 396; Corporations—Jurisdictions—Foreign Corporations and Venue in the Federal Courts, 38 Michigan Law Review 1047, Courts—Federal Venue Statute—Foreign Corporations—Designation of Agent as Effecting A Waiver, 24 Minnesota Law Review 419.

[4] Henderson, The Position of Foreign Corporations in American Constitutional Law 77-100; Bullington, Jurisdiction Over Foreign Corporations, 6 North Carolina Law Review 147; Cahill, Jurisdiction Over Foreign Corporations and Individuals Who Carry on Business Within the Territory, 30 Harvard Law Review 676; Fead, Jurisdiction over Foreign Corporations, 24 Michigan Law Review 633; Scott, Jurisdiction over Non-Residents Doing Business Within the State, 32 Harvard Law Review 871; Federal Jurisdiction Over Foreign Corporations (comment), 35 Columbia Law Review 591; Dobie, Venue in Civil Cases in the United States District Court, 35 Yale Law Journal 129; Foster, Place of Trial in Civil Actions, 43 Harvard Law Review 1217; Hale, Venue of Suits in Federal Courts Against Non-Resident Corporations, 5 Law Notes 224; 11 Texas Law Review 359.

tion of venue privileges. They have not, but this appellee has, supposed the designation of a state official and service of process on a company official prescribed by a state statute.

It is apparent that the appellee's "suppose" is a refinement on the suggested express reservation of the venue privilege. The difficulty of the contradiction in terms there presented may result in the final abandonment of that "aura of discredit" so far retained in the difficult effort to preserve juristic symmetry and at the same time not disturb stare decisis. We can currently leave that outcome to our betters. For here there is no expression of any kind, only a claimed implication. We are of the opinion that whatever the ultimate view on an expressed refusal to waive, no consideration can or will be given to anything less. Otherwise the fiction of consent would be a negation and not a fiction.

But even if this were not so, this appellee has not reached the ground. This because its implication must remain in the category of allegation rather than in the realm of proof. A contrary holding ignores the distinction between venue and service of process. The former is the matter of appropriate forum, in theory at least, based on public and litigants' convenience. MacGregor, Venue, 37 Canada Law Journal 831. The latter, on the other hand, is concerned with something more fundamental than convenience, namely, a legal angle of the ethic against secrecy. Although here, too, fiction has raised its ugly head, in principle one's day in court depends upon notice of when, where and about what that court meets. Baldwin v. Hale, 1 Wall. 223, 17 L.Ed. 531; Louisville & N. R. Co. v. Western U. Tel. Co., 234 U.S. 369, 34 S.Ct. 810, 58 L.Ed. 1356; Baker v. Baker, E. & Co., 242 U.S. 394, 37 S.Ct. 152, 61 L.Ed. 386.

This distinction makes clear, we think, the unreal character of the implication contended for. The process is served on the very person most likely to have the litigation it began in charge. That service is made in exact factual compliance with a Pennsylvania Statute, P.L. 1851, p. 353. That statute has been discussed in the leading case of Shambe v. Delaware & H. R. Co., 288 Pa. 240, 135 A. 755, 757, where the court, speaking through Mr. Justice Kephart, said:

"It is admitted appellee was doing business in a certain part of the state, and had registered in compliance with our act of 1911 [15 P.S.Pa. § 3141 et seq.]. Plaintiff might have brought his action in Luzerne county, where the accident happened, serving the secretary of the commonwealth. He chose, however, to proceed under section 6 of the Act of April 8, 1851 (P.L. 353; Pa.St.1920, § 17228 [12 P.S.Pa. § 1310]), which provides that suit may be brought against a foreign corporation in any county where it—'shall have an agency or transact any business * * * in this commonwealth * * * and the * * * writ may be served upon the president, cashier, agent, chief or any other clerk, or upon any directors or agent of such * * * corporation within such county.'

"It has been definitely established that this act was not repealed by the Act of 1911, supra, and that suit may be brought under the provisions of either of them. Eline v. Western Maryland Railway Co. [253 Pa. 204, 97 A. 1076], supra."

See, also, Boreman, Pennsylvania Statutes Relative to Actions Against Foreign Corporations With Respect to Venue and Process, 2 University of Pittsburgh Law Review 197.

The purpose of service is, as we have seen, notice. To serve the cashier accomplishes that purpose far better than to serve a remote commonwealth secretary. The consent dectrine laid down in the Neirbo case is not avoided because of service in accord with some other recognized statutory practice. That would not only put words in the corporate mouth, but words that do not even make sense.

The judgment of the District Court is reversed.