## WILLIAMS et al. v. JAMES et al.
### No. 212.

District Court, W. D. Louisiana, Opelousas Division.

July 26, 1940.

James Domengeaux, of Lafayette, La., for plaintiffs.

Davidson & Davidson, of Lafayette, La., for defendants.

PORTERIE, District Judge.

The plaintiffs, five in number, domiciled in this district, sue in damages for injuries suffered by them when the automobile in which they were riding, and which was being operated over a state highway located in this district, collided with the truck of the defendant, Roy C. James, a resident of the city of Houston, Harris County, Texas.

The Highway Insurance Underwriters is joined as defendant in the suit by the following language of the petition (Article VIII): "That on the date aforesaid, that is, on December 18th, 1938, your defendant, Highway Insurance Underwriters, was the insurer of the defendant, Roy C. James, operating under the trade style of James Truck Line, for all awards of damage, not exceeding a stipulated amount contained in said policy which might be awarded against the said Roy C. James and/or James Truck Line by any competent Court growing out of personal injury or property damage caused by the said Roy C. James and/or James Truck Line and/or his employee, in the operation of the said James Truck Line while driving said truck; that, therefore, defendant, Highway Insurance Underwriters, is bound in solido with the defendant, Roy C. James and/or James Truck Line for such sums herein claimed or such awards as may be made by this Honorable Court in favor of petitioners in accordance with the provisions of said contract of insurance and/or indemnity as above recited and in accordance with existing law."

One of the allegations of the petition (Article IX) is that "The Highway Insurance Underwriters is a foreign corporation doing business in the State of Louisiana, having complied with existing laws applicable to such corporations and is, therefore, subject to the jurisdiction of this Court by citation upon the Secretary of State of the state of Louisiana, its duly appointed agent by law for service of process."

An amount of more than $3,000 is claimed by each of the five plaintiffs.

Domiciliary service was had on James, through his wife, at his residence in Houston, Texas, and was executed through the United States marshal for that district; a second service was had on James through the Secretary of State for the state of Louisiana, at Baton Rouge, within the eastern district of Louisiana, this service being executed by the United States marshal for the eastern district.

Service was had on Highway Insurance Underwriters through the Secretary of State and was executed by the marshal for the eastern district of Louisiana.

The defendant James moved to dismiss because (a) "the defendant was not and is not subject to service of process within the Western District of Louisiana, because he is and was a citizen and resident of the state of Texas and was not in the state of Louisiana at the time of the attempted service of summons herein;" and because (b) "the defendant was not properly served with process in this action, all of which is more clearly shown by the allegations of plaintiffs' petition and by the return of the marshal on the summons issued;" and, also, because (c) "the jurisdiction of this Court is invoked solely on the ground that the action is between citizens of different states, and seeks a personal judgment against defendant, who is not a resident or citizen of the state of Louisiana and was not and is not within said state and district, and has not and cannot be served therein."

The defendant Highway Insurance Underwriters moved to dismiss because (a) "the defendant, Roy C. James, is a citizen and resident of the state of Texas, and was not and is not subject to service of process within the Western District of Louisiana, and he was not properly served with process in this action, and the said Roy C. James is an indispensable party to this proceeding;" and because (b) "the defendant is a corporation organized under the laws of the state of Texas and was not and is not subject to service of process within the Western District of Louisiana, and the defendant has not been properly served with process in this action, all of which is more clearly shown by the allegations of plaintiffs' petition and by the return of the marshal on the summons issued;" and, also, because (c) "the summons was served on it through the Secretary of State of Louisiana in the Eastern District of Louisiana, and it is not and was not in the Western District of Louisiana and cannot be served therein."

We are disregarding the domiciliary service had on James at his residence in Houston, Texas, and executed by the United States marshal for that district. The second service, the one through the Secretary of State, as agent for James, is the one we use in the case.

Before discussing the main question in this case, it is necessary to decide as to whether or not Roy C. James, whom we might call the main defendant, is an indispensable party to this proceeding insofar as the codefendant, the insuring company, be concerned. We believe Act 55 of the Legislature of Louisiana for the year 1930 to be sufficiently broad to prevent the application of any kind of theory of indispensability of one party or the other. The statute authorizes the suit clearly as brought herein, and particularly under the allegations of Article VIII of plaintiffs' petition, previously quoted. The applicable part of the statute reads as follows: "* * * Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido."

It is to be assumed that the plaintiff will compel the production into court at time of trial of the contract between James, the tort-feasor, and his insurer.

The venue in this case is clearly established as the plaintiffs have residence in this district. Judicial Code, Section 51, 28 U.S.C.A. § 112(a). This opinion will develop that double venue is established, because each of the two defendants has by contract consented to be sued in the courts of Louisiana, federal as well as state.

It follows rather simply that service of process upon each one of the defendants, through the same appointed agent, the Secretary of State, is legal, irrespective of where might be the actual physical residence of the Secretary of State, and whether executed by the marshal of the western district or the marshal of the eastern district of Louisiana.

In reaching the above conclusions, we must confess frankly that we have moved mentally with much vacillation, for there are a number of respectable opinions along strict lines of interpretation leading to a contrary view; and there are those equally respectable opinions along liberal lines of interpretation, placed on what, we think, is equally good legal foundation, which support the views of this opinion.

Whether to be strict or liberal with the rule of interpretation should be decided, to some degree, by the practical result attained. To the lay mind and, we hope, to the trained legal mind, it is not logical to say that in a case such as the one at hand, if the Secretary of State perchance had residence in the western district instead of the eastern district, we should have no case to decide. It is disappointing to the lay mind, and should be more so to the legally trained mind, that in such a case as this it should be important whether or not the officer making service of process was the marshal of the one district or the other. It would seem that the draftsmen of the Rules of Civil Procedure thought of this when they composed Rule 4(f), 28 U.S.C.A. following section 723c, as follows: "All process other than a subpœna may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpœna may be served within the territorial limits provided in Rule 45."

We now reach our task.

(a) Is the Highway Insurance Underwriters, a corporation, already blessed by jurisprudence with the fiction of being a "person", in court as to its "person"? A judgment against it, in personam, is sought.

The law of Louisiana, providing for civil process against non-resident insurance companies, authorized to do business in Louisiana, is, as follows (Act 105 of 1898, Art. II, § 1, Dart's La.Stats. (1932) § 4018):

"No Insurance · company, corporation, association or society organized under the laws of any State in the United States, or any foreign country shall directly or indirectly issue policies, take risks or transact business in this State, until it shall have first appointed in writing the Secretary of State of this State to be the true and lawful attorney of such company, corporation, association or so-

ciety, in and for this State upon whom all lawful process in any action or proceeding against the company, corporation, association or society may be served with the same effect as if the company, corporation, association or society existed in this State. Said power of attorney shall stipulate and agree on the part of the company, corporation, association or society that any lawful process against the same, which is served on said attorney shall be of the same legal force and validity as if served on the company, corporation, association or society, and that the authority shall continue in force so long as any policy, or other liability remains outstanding against the company, corporation, association or society in this State. A certificate of such appointment, duly certified and authenticated, shall be filed in the office of the Secretary of State and copies certified by him shall be deemed sufficient evidence. Service upon such attorney shall be deemed sufficient service upon the principal.

"Whenever lawful process against a company, corporation, association or society shall be served upon the Secretary of State he shall forthwith forward a copy of the process served on him by registered mail, postpaid, and directed to the Secretary or manager of the company.

"Provided the provisions of this section shall not be construed to interfere with the rights to sue insurance companies at the place of loss, as now provided by law.

"Provided, That no judgment by default shall be entered against any company, corporation, association or society if it can be shown to the satisfaction of the court that the Secretary of State has neglected or failed to forward copy of process at the time said service was made upon him."

On the question of the reach and import of this Act, if, firstly, it should apply to the federal courts within the state as well as to the state courts, then, secondly and consequently, if non-resident corporations upon doing business in a state become "residents", under Section 51, of the federal courts of that state, as we have espoused with mental satisfaction the doctrine of the Supreme Court of the United States found in the case of Neirbo Co. et al. v. Bethlehem Shipbuilding Corporation, Ltd., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. ——, which case answers both questions in the affirmative, we shall follow and apply in this case what we think are the permitted and logical deductions to be drawn from it.

Reference to the Neirbo case is made not in the bare spirit of obedience due by a court of first instance to the superior court of final arbitrament; but in the spirit of an enthusiastic espousal of its principles. These principles, firstly, bring about practical results of great value; secondly, they search their way back to ancient pronouncements of the Supreme Court and groove themselves there logically; thirdly, they do not engender eccentric technical variations; and, consequently and finally, the case emerges with force, practicality, and liberalism.

■ Any district court of the United States has the power to adjudicate in the instant case, based on diversity of citizenship and the amount at issue being over three thousand dollars. Jud. Code § 24, 28 U.S.C.A. § 41; Neirbo Co. v. Bethlehem Shipbuilding Corp., supra, and all cases cited therein at paragraph [1-3].

■ If the particular localized venue of residence, as provided by Section 51, be established in any federal district in the state under the holding of the Neirbo case, by making the designation of an agent for service of process a consent by the foreign corporation of *residence* valid in the whole state, it follows that the provisions as to service of process on the person of the defendant corporation, being generally valid only if made on its agent when a resident of the federal district having venue of the case, are likewise waived. The deep import of such a contract between the state and the foreign corporation, as first brought out by Judge Cardozo, is approvingly referred to in the Neirbo case by Mr. Justice Frankfurter, as follows (308 U.S. 165, 60 S.Ct. at page 158): "The scope and meaning of such a designation as part of the bargain by which Bethlehem enjoys the business freedom of the State of New York, have been authoritatively determined by the Court of Appeals, speaking through Judge Cardozo: 'The stipulation is therefore a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent. He is made the person "Upon whom process against the corporation may be served." * * * The contract deals with jurisdiction of the person. It does not enlarge

or diminish jurisdiction of the subject-matter. It means that, whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person.' Bagdon v. Philadelphia & Reading C. & I. Co., 217 N.Y. 432, 436, 437, 111 N.E. 1075, 1076, L.R.A. 1916F, 407, Ann.Cas. 1918A, 389. A statute calling for such a designation is constitutional, and the designation of the agent 'a voluntary act.' Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610."

In other words, service by the marshal of the district of venue is good beyond the geographical limits of his district. If the *"residence"* be in the district, why not the *person?*

This holding by us is not new or novel. See the excellent reasoning in the case of Wefel v. W. P. Brown & Son Lumber Co., D.C.S.D. Ala. 1932, 58 F.2d 667. To the credit of the author, let us note that this case is previous to both the date of adoption of the Rules of Civil Procedure, Rule 4 (f), and the date of the opinion in the Neirbo case. Since Rule 4 (f), and using Rule 4. (f) for authority, the case of Devier v. George Cole Motor Co., D. C.W.D.Va.1939, 27 F.Supp. 978, holds approvingly, too.

We are confronted with a number of decisions from courts of first instance, even since the adoption of Rule 4 (f), which hold to the contrary. They adhere to the well-settled principle that the civil process of a federal court does not run outside the district and that service outside the district is void. Rev.St. U.S. Sec. 787, 28 U.S.C.A. § 503.

In the case of Carby v. Greco, D.C. W.D. Ky. 1940, 31 F.Supp. 251, are found cited the well-known and generally-accepted cases in support of this enunciation, to-wit: Toland v. Sprague, 12 Pet. 300, 9 L.Ed. 1093; Munter v. Weil Corset Co., 261 U.S. 276, 43 S.Ct. 347, 67 L.Ed. 652; Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119; Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 57 S.Ct. 273, 81 L.Ed. 289.

The case of Melekov v. Collins, D.C. S.D. Calif. 1939, 30 F.Supp. 159, is to the same effect, quoting the same principles, supported by the same cases.

In these two cases, however, when the interpretation of Rule 4(f) is reached, it is not given countenance. They hold that to apply Rule 4 (f), as it very plainly reads, would be an unwarranted enlargement of jurisdiction, because the service of process is without the actual geographic area of the court having the venue.

The cases of De, Laet v. Seltzer, D.C., 1932, 1 F.Supp. 1022, O'Donnell v. Slade, D.C., 1933, 5 F.Supp. 265, and Iser v. Brockway, D.C., 1938, 25 F.Supp. 221, are disposed of in the Carby v. Greco case with the notation that service of process was made within the territorial limits of the district having venue.

The Neirbo case is given scant consideration in the discussion and is laid aside with the short sentence (31 F.Supp. at page 253): "In that case summons was served within the territorial limits of the district." No consideration or stress is made of the fact that neither the Neirbo Company nor the Bethlehem Corporation had residence. in the district, except through consent and waiver, accomplished by the designation of an agent within the state wherein the federal district was located.

Would the Neirbo case have reached a different conclusion if the appointed agent had been a resident of another federal district? We believe not; especially not since the existence of Rule 4 (f).

If under the Neirbo case the provisions of Section 51 are waived, it would seem that the waiver of the provisions of Section 503, 28 U.S.C.A., should follow, as of course, through the same voluntary act and by the same implied consent.

The above statement is made even though we realize that Section 51 accords a privilege to a *person*—the fact that the plaintiff (person) or the defendant (person) should have *residence* in the district; and that, differently, in Section 503 the language does not import a convenience to any person but was formerly, before the amendment of 1935, a delimitation by the Congress of the United States of the area for the functions of one of its officers, to-wit: the marshal of the United States District Court. But upon the consideration of the facts of the instant case, supported by the observation of the practical results of civil process on the person in cases in the federal courts, is it not true that the restriction upon the marshal that he may not serve process except within his district is actually a privilege to the defendant, becoming an advantage and a convenience to him in

evading service, jurisdiction, and accountability for his obligations?

Section 503, 28 U.S.C.A., today reads as follows: "It shall be the duty of the marshal of each district to attend the district courts when sitting therein and to execute all lawful precepts issued under the authority of the United States; and he shall have power to command all necessary assistance in the execution of his duty." R.S. 787, as amended Mar. 3, 1911, c. 231, § 291, 36 Stat. 1167; June 15, 1935, c. 259, § 1, 49 Stat. 377. (The latter amendment eliminated the words "throughout the district" after the words "to execute".)

The Neirbo case does away with a prescribed locality of trial; the instant case with a prescribed locality for service of summons; if anything, the first seems the greater and the superior.

The legal beneficence of the Neirbo case is defeated by the reasoning in the above recent line of decisions. We have been unable to imagine a factual situation where Rule 4 (f) could be applied at all, if it be qualified as being of substantive jurisdiction and as not being merely procedural.

As we stated at the very beginning of this opinion, one is in the contemplation that diametrically opposite conclusions of law are reached, depending upon the fortuitous location of the residence of the secretary of state, or of the specially appointed agent for service. We believe Rule 4 (f) was promulgated just to prevent this anomaly of law.

 Section 51 "merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election." 308 U.S. 165, 60 S.Ct. at page 155, 84 L.Ed. 167.

We are fortunate that the leading cases under which some phases of the Neirbo doctrine are developed are the very cases from which we readily may declare the parallel doctrine as to permissibility of waiver of jurisdiction of place for summons of the defendant.

In Lee v. Chesapeake & O. Ry. Co., 260 U.S. 653, 43 S.Ct. 230, 231, 67 L.Ed. 443, we have: "It is a necessary conclusion from repeated decisions, going back to the original Judiciary Act of 1789 (1 Stat. 73) that this provision [referring to Sec. 51] does not limit the general jurisdiction of the District Courts or withdraw any suit therefrom, but merely confers a personal privilege on the defendant, which he may assert, or may waive, at his election, and does waive if, when sued in some other district, he enters an appearance without claiming his privilege."

Another instance of this fact is found in the case of Robertson v. Railroad Labor Board, 268 U.S. 619, at page 622, 45 S.Ct. 621, at page 622, 69 L.Ed. 1119, from which we quote:

"In a civil suit in personam, jurisdiction over the defendant, as distinguished from venue, implies, among other things, either *voluntary appearance by him* or service of process upon him at a place where the officer serving it has authority to execute a writ of summons." (Italics supplied)

Again, the case of Toland v. Sprague, 12 Pet. 300, 330, 9 L.Ed. 1093, the leading and most oft-quoted case and the one most depended upon for the strict application of Section 11 of the Judiciary Act of 1789 (now Section 51 of the Judicial Code, 28 U.S.C.A. § 112 (a), happens to contain one of the very earliest enunciations of the rule that the provisions of Section 11 are *personal* to the defendant, and may be waived by voluntary act, by implication, by contract or consent, or through appearance and silence, for, within the body of the decision of this case, by Mr. Justice Barbour, we take the following quotation: "The next inquiry is, whether the process of attachment having issued improperly, there has anything been done which has cured the error. And we think that there is enough apparent on the record to produce that effect. It appears that the party appeared and pleaded to issue. *Now, if the case were one of a want of jurisdiction in the court, it would not, according to well established principles, be competent for the parties by any act of theirs to give it.* But that is not the case. The court had jurisdiction over the parties and the matter in dispute; the objection was that the party defendant, not being an inhabitant of Pennsylvania, nor found therein, *personal process could not reach him,* and that the process of attachment could only be properly issued against a party under circumstances which subjected him to process in personam. Now, this was a personal privilege or exemption which it was competent for the party to waive. The cases of Pollard v. Dwight,

4 Cranch 421 [2 L.Ed. 666], and Barry v. Foyles, 1 Pet. 311 [7 L.Ed. 157], are decisive to show that after appearance and plea, the case stands as if the suit were brought in the usual manner." (Italics supplied) (12 Pet. at page 9 L.Ed. at page 1105)

There is no debate on the point that the marshal of the eastern district has the authority to serve the Secretary of State, domiciled as to *physical person* in the eastern district. Service on the Secretary of State is good service on the defendants, and brings their persons into the western district which has venue of the subject, because by statute-contract each has agreed to be everywhere in the state. The Neirbo doctrine applied to the instant case places the person of each of the two defendants all over the state; provisions of laws as to jurisdiction of person have been waived. The service on the physical person of the Secretary of State is only necessary because he is the one to send notice to the defendant—all of which has been by the election and is for the convenience of the defendant. This is enough to overrule the motions of defendants.

But we have another separate and complete reasoning to come to the same ruling. We come now to what is a congressional judgment characterizing Rule 4 (f) as being altogether procedural and not being substantive at all. We find that Rule 4 (f) has the quality of a congressional enactment.

Objections to the validity of Rule 4 (f) were specifically presented to the Supreme Court of the United States: that it enlarged the jurisdiction. See the Report of the Advisory Committee (April, 1937) 14: "Some members of the bar question the power of the Court to make this extension." Yet the Supreme Court of the United States left Rule 4 (f) untouched. After the Rules were promulgated and reported by the Court to the Congress, the Congress adopted them intact. This, we say, was a congressional sanction or enactment.

This story of the birth of Rule 4 (f) is given far-reaching significance and great value by the case of Sibbach v. Wilson & Co., 7 Cir., 1939, 108 F.2d 415, wherein Rule 35 (a), 28 U.S.C.A. following section 723c having been adopted in like circumstances as Rule 4 (f), was declared to be a legislative enactment—the equivalent of a statute of Congress. The case holds these facts of preparation, promulgation and enactment, and particularly, with Rule 82 providing that jurisdiction and venue shall remain unaffected, to prove that both Congress and the Supreme Court interpreted Rule 35 (a) as not abridging substantive rights. Likewise, therefore, Rule 4 (f) is not an abridgment of substantive rights.

However, before the enactment of 4 (f), the authorities have been clear and one-voiced in holding that a federal district court cannot issue process to be served on a person residing in the state, but in another district. Sewchulis v. Lehigh Valley Coal Co., 2 Cir., 1916, 233 F. 422; J. E. Petty & Co., Inc. v. Dock Contractor Co., 3 Cir., 1922, 283 F. 341. These two cases held that 28 U.S.C.A. § 503, in its language "* * * and to execute, *throughout the district,* all lawful precepts directed to him" (italics supplied) created a substantive right. What is the effect of these cases when Rule 4 (f) is viewed as a congressional enactment? We hold that Rule 4 (f) is a characterization of 28 U.S.C.A. § 503, as a procedural law. The Sewchulis and Petty cases must bow to this new and recent characterization. We believe that these two cases, if decided today with Rule 4 (f) having to be given effect, in the light of the declaration of the Supreme Court and the Congress that it is of procedural content only, would have to hold contrarily. Two cases of the United States Supreme Court were definitely abandoned by the 7th District Circuit Court in reaching its conclusion in the Sibbach v. Wilson case.

There is another very strong reason why these two cases, if decided today, would hold oppositely. They were decided when Section 503 contained the phrase "throughout the district." Section 503, since the amendment in 1935 (June 15, 1935, c. 259, § 1, 49 Stat. 377), does not contain the phrase "throughout the district." The elimination of this restrictive phrase harmonizes Section 503 as it reads today with Rule 4 (f).

This amendment of 1935 and the declaration by Congress that the content of Rule 4 (f) is procedural, modifies, or definitely sets aside, also, the formerly correct holdings of the following cases: United States to Use of O'Connell v. Kearns, D.C.R.I. 1928, 26 F.2d 235; Keller v.

American Sales Book Co., D.C.N.Y. 1936, 16 F.Supp. 189; Boykin v. Hope Production Co., D.C.La. 1931, 58 F.2d 1041.

This should be, because of the nearly unanimous desire of our federal judiciary, supported by this enactment of the new rules by the Congress of the United States, to make legal conclusions so freed of intricacy of procedure and form that the reach for the goal of actual and prompt justice will be helped.

The above is the best support—and, we think, fully and legally sufficient—for our ruling.

When the arm of the marshal reaches out beyond the lines of his district and brings the defendant's person into court, jurisdiction is not affected since "what matters the court shall hear and decide" remain the same. Read Dean Charles E. Clark, Yale University School of Law, Reporter to the Supreme Court Advisory Committee, now circuit judge, 2nd Circuit, Proceedings before the Cleveland Institute on the Federal Rules, pp. 205, 206; William D. Mitchell, Chairman, Supreme Court Advisory Committee, ibid., pp. 183, 184.

It is important and interesting to know of the penchant of the able reporter on the character and effect of 4(f); therefore, we quote at length (supra): "The question has been raised whether this is not a substantive change, one affecting jurisdiction and venue. I might say on that, it is our theory that definitely it is not. This is not a matter of either the jurisdiction of the court, what matters the court shall hear and decide, or of the venue, which is the place where certain kinds of action shall be tried. This affects neither one of those points. It simply says that in cases where the district court already has jurisdiction and venue its process may reach as far as the confines of that state itself. In other words, that is why we consider it procedural. It is simply allowing people to be brought before the court within the entire state and not merely within one district."

From another viewpoint, granting substantive rights are involved, these are not, in fact, denied in this case, because there is a contract here. The legislature of a sovereign state and the consent of parties have brought a state of facts by agreement wherein personal jurisdiction is in the district wherein venue jurisdiction lies. As is so aptly stated in Re Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853, 855: "So, as in this case, if the Legislature of a State requires a foreign corporation to consent to be 'found' within its territory, for the purpose of the service of process in a suit, as a condition to doing business in the State, and the corporation does so consent, the fact that it is found gives the jurisdiction, notwithstanding the finding was procured by consent. The essential fact is the finding, beyond which the court will not ordinarily look."

■■ Here is another concept to support our final ruling, applicable even if Sec. 503 be taken as substantive in character. The consent waives all but the notice through the Secretary of State provided by the statute-contract. When the actual service of process is by the marshal of the district of the residence of the Secretary of State, and the defendant, either the person or the corporation, by statute-contract, is a resident anywhere in the state, it is good process, in form and effect. The result is that the marshal of the eastern district is made "to execute all lawful precepts" within the eastern district, as far as the physical person of the Secretary of State be concerned; that is the necessary form of Sec. 503; then by the statute-contract the waiver of the effect (enlargement of personal jurisdiction) of Sec. 503 authorizes the result obtained, to-wit: that the corporation, doing business all over the state, and the person, using the roads all over the state, each, is in the western district court for the purposes of the instant suit, though service on the common physical alter ego was in the eastern district.

The opinion of the district court is subject to affirmance or reversal. Such opinion, consequently, is permitted to have a variety of grounds, consistent or inconsistent, concomitant or alternative, to support itself. Final acceptance or rejection of one or more of the grounds is left to the appellate court. The final appellate court declares the one and final ruling, reaching a definiteness of grounds. Accordingly, in this opinion is offered variety of support for the final conclusion. There is that courteous facility, which one sees when the learning apprentice places at hand for the ready use of his master the various materials and tools which might be used at the work.

(b) Is Roy C. James, the main defendant, in court as to his person?

The Louisiana statute that brings the person of Roy C. James into this court is Act No. 86 of the Legislature of Louisiana

for the year 1928, as amended by Act 184 of 1932, Dart's La.Stats. (1932) §§ 5296, 5297, providing as follows:

"The acceptance by nonresidents of the rights and privileges conferred by existing laws to operate motor vehicles on the public highways of the state of Louisiana, or the operation by a nonresident or his authorized employee of a motor vehicle on the said highways other than under said laws, shall be deemed equivalent to an appointment by such nonresident of the secretary of the state of Louisiana or his successor in office, to be his true and lawful attorney for service of process, upon whom may be served all lawful process in any action or proceeding against said nonresident growing out of any accident or collision in which said nonresident may be involved while operating a motor vehicle on such highways, or while same is operated by his authorized employee; and said acceptance or operation of said vehicle shall be a signification of his agreement that any such process against him which is so served shall be of the same legal force and validity as if served on him personally."

"The service of such process shall be made by serving a copy of the petition and citation on the secretary of state, or his successor in office, and such service shall be sufficient service upon said nonresident; provided that notice of such service, together with a copy of the petition and citation are forthwith sent by registered mail by the plaintiff to the defendant, or are actually delivered to the said defendant, and defendant's return receipt, in case notice is sent by registered mail, or affidavit of the party delivering the petition and citation in case notice is made by actual delivery, is filed in the proceedings before judgment can be entered against said nonresident. The court in which the action is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action."

Similarly here, as in the Neirbo case, we have the "voluntary act" of the defendant. Upon his entry into the state to use, and by using, the highways of the state he makes a contract with the people of the state, designating an agent for service of process. The same reasoning as previously made in this opinion interprets this designation as being a "consent" for submission of his person to both the state courts and the federal courts within the state. It is unnecessary to repeat our previous reasoning, under (a), as it is so obviously and, as a whole, applicable here.

Though it lengthen this opinion unduly, the language of Justice Butler in Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091, outlining the practical background and source of a similar statute to the Louisiana statute, is as follows (274 U.S. 352, 47 S.Ct. at page 633, 71 L.Ed. 1091): "Motor vehicles are dangerous machines, and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresidents alike, who use its highways. The measure in question operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights. Under the statute the implied consent is limited to proceedings growing out of accidents or collisions on a highway in which the nonresident may be involved. It is required that he shall actually receive and receipt for notice of the service and a copy of the process. And it contemplates such continuances as may be found necessary to give reasonable time and opportunity for defense. It makes no hostile discrimination against nonresidents, but tends to put them on the same footing as residents."

The state legislation and the consent of the defendant motorist have brought about a state of facts authorizing this United States court to take cognizance of the case and of his person. Ex Parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853; the Neirbo case, supra; Oklahoma Packing Co. et al. v. Oklahoma Gas & Electric Co., et al., 10 Cir., 100 F.2d 770.

Similarly, as in this Oklahoma case, the situs of the accident in the instant case is in a parish (county) within the federal district and the state law of Louisiana provides for suit in the district court of the parish wherein the accident occurred. Louisiana Code of Practice, Art. 165, Sec. 9.

Valid judgment, even by default, against the corporation without actual notice is made impossible by the provisions of the Act to the effect that the Secretary of State must forward by registered mail to the corporation officials a copy of the

process served. The jurisprudence is that for a confirmation of default there must be offered in court the certificate of the Secretary of State, under oath, proving the sending by registered mail, of the copy of the process, etc., and more, the return-receipt, signed by the corporation official, showing all was received by the corporation. Lusk v. Pacific Mut. Life Ins. Co., D.C.La.1930, 46 F.2d 502; Noyola v. Norske Lloyd Ins. Co., Ltd., 163 La. 82, 111 So. 607. The same situation, of course, exists under the statute concerning the person—the motorist. Spearman v. Stover, La.App., 170 So. 259.

██ Both defendants moved to dismiss the petition on the other ground—that of want of the necessary amount to establish jurisdiction. The evidence to support is made through the affidavit of one physician, and covers the physical condition of each of the five plaintiffs. The evidence offered is not convincing, either in quality or form. In the absence of actual trial had on this point, with afforded opportunity for witnesses on both sides to testify in person, and considering the allegations of plaintiff under oath, contra, we must overrule the motion to dismiss on this ground.

Motions of both defendants, therefore, are overruled. Judgment will be signed when presented.