## COASTAL CLUB, Inc., v. SHELL OIL CO., Inc.

### No. 632.

District Court, W. D. Louisiana, Lake Charles Division.

July 11, 1942.

860

LeDoux R. Provosty, of Alexandria, La., for plaintiff.

George C. Schoenberger, Jr., and Oliver L. Stone, both of Houston, Tex., for defendant.

PORTERIE, District Judge.

The plaintiff is a Louisiana corporation and the defendant a Virginia corporation, and the matter in controversy exceeds the sum of $3,000.00.

The petition in this suit, after setting out facts—not necessary to itemize or digest for our present purpose—concludes, in Article 9, as follows:

"It was further implied in said lease and defendant was further legally obligated after the production of oil or gas in paying quantities on said lands to proceed to drill said lands and develop the lease with *reasonable diligence*. This the defendant has failed and refused to do despite repeated

demand, although said leased lands contain oil which is capable of production and the drilling of an addition Well or Wells would be prudent and profitable to plaintiff and defendant." (Italics supplied.)

Then more facts are given—not necessary to itemize or digest—and we reach the conclusions of Article 12, as follows: "Under the provisions of said lease contract, paragraph 8, in case of cancellation of the lease defendant has the right to retain five acres of land around each well producing, such tract to be designated by Lessee in as near a square form as practicable."

Then, omitting another article of facts, we reach the following conclusive contention: "In the event defendant is not bound by the provisions of the lease and is allowed to retain more than five (5) acres around each well, plaintiff says that Coastal Club, Inc. No. 1 will efficiently drain forty (40) acres around said well. The other two hundred acres of land which defendant refuses to develop and which it is attempting to retain without production, plaintiff believes and alleges contain, and if drilled will produce, oil in paying quantities. The lease should, therefore, be cancelled except for forty (40) acres of land around 'Coastal Club, Inc. No. 1' well."

And the full prayer is, as follows:

"Wherefore, plaintiff prays and demands judgment against defendant: First Claim—Fully cancelling the oil, gas and mineral lease dated April 11, 1935, subject to defendant's right to retain five (5) acres of land in as square a form as possible around 'Coastal Club, Inc. No. 1' well drilled in the North-West corner of Section 27, Township 12 South, Range 6 West. For attorney's fees in the sum of Two Thousand ($2,000.00) Dollars, interest and costs.

"Second Claim—Fully cancelling said lease subject to defendant's right to retain forty (40) acres of land in as square a form as possible around 'Coastal Club, Inc. No. 1' well. For attorney's fees in the sum of Two Thousand ($2,000.00) Dollars, interest and costs."

A motion to dismiss has been filed by the defendant on the ground that the action "is in the wrong district because the claim is one for forfeiture of an oil, gas and mineral lease granted in 1935, a personal right, and defendant's domicile in the State of Louisiana is in the Eastern District of Louisiana, where its agents for the service of process reside and are domiciled." And this is the motion for us to decide.

We should think this action is cognizable before any district court of the United States: Judicial Code, § 24 (1), 28 U.S.C.A. § 41 (1). Ex parte Schollenberger, 96 U.S. 369, 378, 24 L.Ed. 853. The *subject matter* of this action is, therefore, properly before this court. This fact pervades in this opinion. However, "The clause [section] vesting jurisdiction should not be confounded with the clause [section] determining the particular courts in which the jurisdiction must be exercised." Sweeney v. Carter Oil Co., 199 U.S. 252, 26 S.Ct. 55, 58, 50 L.Ed. 178.

Now, we go back to the petition and we note what we think is the really most important allegation, to-wit: that the defendant corporation "as a condition precedent to being admitted to do business" in the State of Louisiana has filed a written declaration under Act No. 184 of 1924, as amended, and in accordance therewith has named two agents in Louisiana (it is conceded that they are residents individually of East Baton Rouge Parish, Eastern District of Louisiana) to receive service of process.

It is important that we should quote fully the two main sections of this act so that the obligating force and effect upon the qualifying corporation may be well and fully appreciated:

"Every corporation organized under the laws of any other state, territory or country, * * * before being authorized to do business in this State, shall, as a condition precedent thereto, file in the office of the Secretary of State, a written declaration of its domicile, the place or places in the State where it is doing business, the place of its principal business establishment and the name of its agent or agents or other officers in this State upon whom process may be served, which said agent shall be a resident of the parish where the said corporation has an established business. The officer or designated employee of a corporation domiciled in Louisiana and authorized by its Charter to act as the agent of a foreign corporation may be the agent upon whom service of process may be made." Act 184 of 1924, § 1, as amended by Act 335 of 1938, § 1 (Dart's La.Gen.Stats., § 1250).

"The appointment of the agent or agents or officer upon whom service of process may be made shall be contained in a written power of attorney accompanied by a duly certi-

fied copy of the resolution of the Board of Directors of *said corporation consenting and agreeing on the part of the said corporation that any lawful process against the same which is served upon the said agent or officer shall be a valid service upon said corporation* and that the authority shall continue in force and be maintained as long as any liability remains outstanding against said corporation growing out of or connected with the business done by said corporation." (Italics supplied.) Act 184 of 1924, § 2 (Dart's La.Gen.Stats., § 1251).

Accordingly, we hold that Section 51 of the Judicial Code, 28 U.S.C.A. § 112, is clearly and directly applicable and this court is vested with the venue of this case and the jurisdiction of the person of the defendant. Neirbo Co. et al. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437; Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853; Oklahoma Packing Co. et al. v. Oklahoma Gas & Electric Co. et al., 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537; Dehne v. Hillman Investment Co., 3 Cir., 110 F.2d 456. Cf. London v. Norfolk & W. Ry. Co., 4 Cir., 111 F.2d 127. For supporting learned and witty sally, see Ward v. Studebaker Sales Corp. of America, 3 Cir., 113 F.2d 567, 568. "As all agree, it goes far toward removing the discriminatory advantage heretofore enjoyed by foreign corporations. For 'the effect of the pre-Neirbo rule was usually to provide a dodge for the corporation rather than to insure an appropriate place for trial'."

For an obedient ruling by this court under the Neirbo case, with the additional point that service of process through either the marshal for the Eastern or the Western District would be good in this case, see Williams v. James, D.C., 34 F.Supp. 61.

Though all the principles of the Neirbo case [308 U.S. 165, 60 S.Ct. 158, 84 L.Ed. 167, 128 A.L.R. 1437] apply, we desire to quote particularly the following:

"In conformity with what is now § 210 of the General Corporation Law of New York (Consol.Laws, c. 23), Bethlehem designated 'William J. Brown as the person upon whom a summons may be served within the State of New York.' The scope and meaning of such a designation as part of the bargain by which Bethlehem enjoys the business freedom of the State of New York, have been authoritatively determined by the Court of Appeals, speaking through Judge Cardozo: 'The stipulation is therefore a true contract. The person designated is a true agent. The consent that he shall represent the corporation is a real consent. He is made the person "upon whom process against the corporation may be served" * * * The contract deals with jurisdiction of the person. It does not enlarge or diminish jurisdiction of the subject-matter. It means that, whenever jurisdiction of the subject-matter is present, service on the agent shall give jurisdiction of the person.' Bagdon v. Philadelphia & Reading C. & I. Co., 217 N.Y. 432, 436, 437, 111 N.E. 1075, 1076, L.R.A.1916F, 407, Ann.Cas.1918A, 389. A statute calling for such a designation is constitutional, and the designation of the agent 'a voluntary act.' Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610.

"In finding an actual consent by Bethlehem to be sued in the courts of New York, federal as well as state, we are not subjecting federal procedure to the requirements of New York law. We are recognizing that 'state legislation and consent of parties may bring about a state of facts which will authorize the courts of the United States to take cognizance of a case.' Ex parte Schollenberger, supra, 96 U.S. at page 377, 24 L.Ed. 853."

It is clear, therefore, that the motion to dismiss must be overruled.

What we have before us, may we say, is purely a matter of federal procedure. Whether this case be tried in the federal court for this district, the Western District, or in the federal court for the Eastern District, which district the defendant is contending has venue, is immaterial as a matter of substantive law because in either event it will be the provisions as are found in the Civil Code of Louisiana controlling the contract and the cases of our courts thereunder which will decide whether or not there has been "reasonable diligence" in the exploration for oil and gas such as to vitiate, partially or totally, the contract between the plaintiff and the defendant.

■ Now, to engage in dissertation on the point of venue in this case, forgetting all we have just said, if the plaintiff had not added to his prayer "for attorney's fees in the sum of $2,000.00, interest and costs," taking his demand away from an action purely in rem (the other request of his prayer is clearly and purely in rem), we could have held under another and an addi-

tional jurisdiction (and that jurisdiction would seem to embody both subject-matter and person), and that would be under Section 57 of the Judicial Code, 28 U.S.C.A. § 118; see Hamilton v. Young, 5 Cir., 285 F. 223; Louisville & N. R. R. Co. v. Western Union Telegraph Co., 234 U.S. 369, 34 S.Ct. 810, 58 L.Ed. 1356; Ferdig Oil Co. et al. v. Wilson, 10 Cir., 91 F.2d 857; Porter et al. v. Cooke et al., 5 Cir., 63 F.2d 637; Buckley v. Delaware Louisiana Fur Trapping Co., Inc., et al., D.C., 2 F.2d 180; Weaver v. Atlas Oil Co., D.C., 31 F.2d 484. The action is in the nature of a slander of title suit: Nicholson et al. v. Sellwood et al., La.App., 187 So. 837, last paragraph at page 838.

■■ Again, another condition of venue: if this case had originated in the state court of Cameron Parish, the situs of the property involved, the personal action for fees eliminated, and had been removed here on a motion to dismiss, and when, consequently, we should apply the laws of venue and jurisdiction of Louisiana (Goldey v. Morning News, 156 U.S. 518, 15 S.Ct. 559, 39 L.Ed. 517; Courtney v. Pradt, 196 U.S. 89, 25 S.Ct. 208, 49 L.Ed. 398; Abraham Land & Mineral Co. v. Marble Savings Bk., D.C., 35 F.Supp. 500, 501; Griffith v. Enochs, D.C., 43 F.Supp. 352), Cameron Parish being in the Western District, we should hold that the state district court of Cameron Parish had jurisdiction, firstly, because of Act 184 of 1924, and secondly and additionally, because the exception to the rule of domicile of the defendant found in paragraph 8 of Article 165 of the Code of Practice of Louisiana would apply, as the subject-matter of suit is one "relating to real servitudes." Browne v. Gajan, La. App., 175 So. 486; Gulf Ref. Co. v. Glassell, 186 La. 190, 171 So. 846, 848, particularly at page 849, wherein is said:

"Oil and gas are fugitive minerals, and the owners of the lands which contain such deposits are not the owners of the oil and gas until they reduce these fugitive minerals to actual possession. The owners of land have a real right in their property to go upon it and explore it for these minerals, in order to gain ownership thereof by securing possession of them. Federal Land Bank v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948, and Frost-Johnson Lumber Co. v. Salling's Heirs et al., 150 La. 756, 91 So. 207. They may sell this real right separate from the fee of the realty, or reserve this real right when they sell the land, and, in both instances, a real right in the land exists. They may lease this right to a third person who obtains thereby a personal right."

The plaintiff herein, though the owner in fee, gave defendant an oil and gas lease—classifying under the last illustration as a *personal right*. But, we have Payne v. Walmsley, La.App., 185 So. 88; and Nicholson v. Sellwood, supra (subheadings 1 and 2). Then, the Legislature of Louisiana at its very next session following the Glassell decision passed Act 205 of 1938. And, finally and determinatively, in Tyson et al. v. Surf Oil Co. et al., 195 La. 248, 196 So. 336, 342, 343, the court said:

"Act 205 of 1938, although it declares that rights created by an oil and gas lease shall be *'incorporeal immovable property,'* simply supplied a name for those characteristics which this court has declared many times were inherent in such agreements; *'incorporeal immovable property'* being merely a synonym for 'incorporeal real right,' or a real servitude imposed upon the land leased in favor of the lessee.

"In Payne et al. v. Walmsley, La.App., 185 So. 88, Act 205 of 1938 was interpreted by the Circuit Court of Appeals mainly as changing a remedy and not a substantive right. This statute, being remedial and procedural in character, was properly made retroactive, and does not infringe substantive vested rights, which accrued under the old law. In Stallings v. Stallings, 177 La. 488, at page 496, 148 So. 687, 689, it is said by the court: 'Remedial statutes and statutes governing procedure apply to all actions brought subsequent to their promulgation. State v. Brossette, 163 La. 1035, 113 So. 366.' But the statute in this case, having been made retroactive, necessarily attaches and applies equally to past as well as to future suits.

"The attack upon the constitutionality of Act 205 of 1938 made by plaintiffs in this case, on the ground that this statute was adopted long after all rights in the case had vested and accrued, since the lease contracts were executed in 1933, and the rents or royalties found to be due accrued in 1937, is without merit, since the statute, in our opinion, does not change any substantive right, but is remedial and procedural in character, and is declared in the statute itself to be retroactive."

The last two paragraphs quoted above, the most recent expression of the court of final arbitrament, affirm fully the holding that Act 205 of 1938 is remedial in charac-

ter, and, therefore, retroactive, first held in Payne v. Walmsley, supra; see, also, Colgin v. Harris, D.C., 27 F.Supp. 798. The instant action, conclusively, is one "relating to real servitudes" La. Code of Practice, Art. 165 (8); and is one "growing out of or connected with the business done by said corporation". § 2, La. Act 184 of 1924.

Accordingly, and to repeat, Cameron Parish being in the western federal district, this court would retain the jurisdiction of the removed case.

 Let us state another and final method of approach. The plaintiff has residence in this district; in the Neirbo case, supra, suit was not brought "in the district of the residence of either the plaintiff or the defendant." Granting that Judicial Code, Section 51, 28 U.S.C.A. § 112, has been interpreted by the courts to mean that suit may be brought in the district of the residence of the plaintiff, if the defendant be found therein and served with process (Gutschalk v. Peck, D.C., 261 F. 212; O'Neil v. Cooperative League of America, D.C., 278 F. 737; Hughes, Federal Procedure, Hornbook Series, 2nd Ed., 1913, § 104, p. 264; Simkins, Federal Practice, Revised Ed., 1923, p. 350)—a long- and well-established rule—we are of the opinion that under the statute-contract, state-wide in effect, the *defendant is found in this district.* And this last conclusion we take from the Neirbo doctrine. So again, we must retain jurisdiction.

The query might be made why did not plaintiff file his suit initially in the Eastern District of Louisiana. The answer is that he might have done so, but he was not compelled to do so; we must admit, the situs of the land involved being in this district, that the preference exercised to file in this district instead of in the other district was "to insure an appropriate place for trial." 113 F.2d 568.

Moreover, the plaintiff sought the argumentative advantage of attempting to establish double jurisdiction in that the action, except for the demand for attorney's fees, would call for a judgment purely in rem and Section 57 of the Judicial Code, 28 U.S. C.A. § 118, would be applicable in addition to Section 51, 28 U.S.C.A. § 112.

 Or, again, the plaintiff might have thought the question of attorney's fees was of ancillary jurisdiction, being a necessary concomitant to the res. We cannot subscribe to this latter theory because the juris-

prudence has been consistent to the degree of no exception in restricting the application of Section 57 to cases where a judgment in rem only may be decreed. See notes of decisions, 28 U.S.C.A. following § 118, note 4, "Construction; in general."

This divagation should end. Its purpose is to foreclose an argument, at least with this court, upon a motion for a rehearing along the various suppositional channels raised by us and ruled upon in the opinion.

Judgment overruling and denying the motion to dismiss filed by the defendant will be signed upon presentation.